## In re WHALEY.

[Cite as *In re Whaley* (1993), 86 Ohio App.3d 304.]

Court of Appeals of Ohio,
Athens County.

No. 1518.

Decided Feb. 11, 1993.

*Philip D. Althouse,* for appellants Tamra and William Adams.[1]

*Scott M. Robe,* for appellant Catrina Stocky.[2]

*Robert W. Stewart,* for appellee Bernard Whaley.

*James D. Sillery,* for appellee Patricia Whaley.

*David Frey,* for guardian ad litem.[3]

PETER B. ABELE, Judge.

This is an appeal from a judgment entered by the Athens County Court of Common Pleas, Juvenile Division, awarding custody of Brandy Marie Whaley to her stepmother, appellee Patricia Whaley.

Appellants Tamra and William Adams assign the following errors:

First Assignment of Error:

---

**1.** Different counsel represented appellants Tamra and William Adams during the proceedings below.

**2.** Appellant Catrina Stocky appeared *pro se* during the custody proceedings below.

**3.** The present guardian *ad litem,* Michael Mercer, and the former guardian *ad litem,* Rebecca Wood, appeared without counsel during the proceedings below.

"The trial court did not have subject matter jurisdiction over the custody case certified to it pursuant to O.R.C. Section 3109.06 without the natural parents first having been found unfit."

Second Assignment of Error:

"The trial court acted against the manifest weight of the evidence by awarding permanent custody of Brandy Marie Whaley to her stepmother."

Third Assignment of Error:

"The trial court committed prejudicial error by excluding relevant evidence bearing directly upon an important issue in the case."

Fourth Assignment of Error:

"The trial court abused its discretion by granting unsupervised visitation privileges to Bernard Whaley."

Appellant Catrina Stocky, the natural mother of the child, assigns the following errors:

First Assignment of Error:

"It was error for the court not to 'ascertain whether appellant [knew] of [her] right to counsel and of [her] right to be provided with counsel if [she] is an indigent person,' as required by R.C. Section 2151.352."

Second Assignment of Error:

"It was error for the court to proceed with this hearing on the issue of custody where appellant had received no notice that custody would be at issue."

Third Assignment of Error:

"It was error for the court to proceed with the hearing where notice of the nature of the hearing was not provided as required by the Due Process Clauses of the Ohio and U.S. Constitutions."

Fourth Assignment of Error:

"It was error for the court to award custody to a nonparent without specifically finding the parent to be unsuitable."

On June 5, 1989, approximately six weeks after appellant Catrina Stocky gave birth to Brandy Marie Whaley, Stocky asked her cousin appellant Tamra Adams and Tamra's husband, appellant William Adams, to care for the child. In an August 16, 1990 dissolution decree, appellant Catrina Stocky and the child's natural father, appellee Bernard Whaley, agreed to give appellants Tamra and William Adams custody of the child.

Appellee Bernard Whaley married appellee Patricia Whaley in September 1990. On January 18, 1991, appellee Bernard Whaley filed a motion in the

Athens County Common Pleas Court seeking custody of the child. That court held hearings on the matter on January 28, February 6, and March 25, 1991. At the March hearing, appellee Bernard Whaley, appellants Tamra and William Adams, appellant Catrina Stocky, and the then guardian *ad litem* Rebecca Wood reached an agreement to give custody of the child to appellees Bernard and Patricia Whaley. The April 2, 1991 referee's report, adopted by the court in full on April 17, 1991, recited the parties' agreement in pertinent part as follows:

"Petitioner Bernard G. Whaley's Motion for Modification shall be granted and he shall be awarded permanent custody of Defendant Brandy Marie Whaley, so long as he is married and cohabiting with Defendant Patricia Whaley. If these parties separate or become divorced, custody shall be re-evaluated.

" * * *

"All parties, except Brandy Marie Whaley, shall attend and participate in parenting skills training classes, as recommended by the Guardian ad Litem."

Appellee Bernard Whaley left appellee Patricia Whaley in May 1991 to live with another woman. On May 31, 1991, appellants Tamra and William Adams filed a motion in the common pleas court seeking custody of the child. On June 14, 1991, appellee Patricia Whaley filed a motion in the common pleas court seeking visitation rights with the child.

Also on June 14, 1991, appellee Patricia Whaley moved the common pleas court to certify the case to the juvenile court pursuant to R.C. 3109.06. Appellants Tamra and William Adams agreed to have the case certified. On July 5, 1991, the common pleas court certified the case to the juvenile court pursuant to R.C. 3109.06. All further trial court proceedings in the instant case occurred in the juvenile court.

On July 26, 1991, the court *sua sponte* appointed a new guardian *ad litem,* Michael Mercer. On September 26, 1991, appellee Patricia Whaley filed a motion for permanent custody of the child, and a motion for visitation with the child. On November 12, 1991, appellee Bernard Whaley filed a motion for visitation with the child.

The court heard all three motions at a January 13, 1992 hearing attended by all the parties to this appeal. Appellee Patricia Whaley testified that she is a licensed foster care provider, she has attended parenting skills classes, and she has a bedroom in her home for the child. Two witnesses testified that she cooks nutritious meals, keeps an immaculate house, and takes good care of the child.

Appellants Tamra and William Adams testified that although their house burned in April 1989, they began to replace drywall only a few weeks before the hearing. They admitted they did not take the child to Beacon school for a peer group class as recommended by the guardian *ad litem*. They further admitted

they did not follow recommendations to take the child to daycare for exposure to other children. They did not attend parenting skills classes as recommended by the guardian *ad litem* at the March 25, 1991 hearing. Additionally, the child had suffered two burns from a kerosene heater in the Adamses' house. Appellant Tamra Adams began classes at Hocking College a few months before the hearing. Appellee William Adams is unemployed.

Counselor Kathleen Kutsko–Barnett testified that she counseled the child and appellants Tamra and William Adams nineteen times after the Adamses' suspected the child had been sexually abused while in the care of appellees. The Adamses' counsel requested the court to qualify Kutsko–Barnett as an expert witness, but the court declined, stating:

"I don't think it is necessary as to qualify her as an expert until you get to some opinion you might as[k] for her. So let's find out what she knows about his case first."

Although the Adamses' counsel later asked Kutsko–Barnett a question calling for an opinion, he did not renew his request for the court to qualify her as an expert witness, and he did not proffer Kutsko–Barnett's answer to the question.

Appellant Catrina Stocky attended the hearing without counsel. At the beginning of the hearing, the Adamses' counsel told the court that appellant Catrina Stocky was a party to the action. Although the court offered her opportunities to question witnesses, she declined. Appellee Michael Mercer, the guardian *ad litem,* asked her questions as follows:

"Q. *Catrina do you have any intentions at all at anytime of asking for custody of Brandy?*

"A. No.

"Q. Can I ask you why?

"A. I think to me she is just fine up at Tammy and Bill, I mean to me she actually, you know, she likes it there, you know. When she comes down to the house she has every indication to me that she likes it up there." (Emphasis added.)

Appellee Michael Mercer later testified that when he asked appellant Catrina Stocky if she wanted custody of the child, she stated, "absolutely not. I would just prefer that the child remain with William and Tammy."

On January 16, 1992, the court awarded permanent custody of the child to appellee Patricia Whaley, and awarded visitation rights to the natural parents, appellee Bernard Whaley and appellant Catrina Whaley.

On February 5, 1992, appellants Tamra and William Adams filed a timely notice of appeal.

On February 19, 1992, the court *sua sponte* appointed counsel for appellee Michael Mercer, the guardian *ad litem.* On February 23, 1992, appellant Catrina Stocky applied for court-appointed representation. On February 26, 1992, the court appointed counsel for appellant Catrina Stocky.

On April 28, 1992, appellant Catrina Stocky filed a notice of appeal stating that she had been served with the January 16, 1992 judgment entry on April 17, 1992. The docket of the court shows that she was served on April 17, 1992. Accordingly, we find appellant Catrina Stocky's notice of appeal to be timely filed. See Civ.R. 58 and App.R. 4(A).

## I

In their first assignment of error, appellants Tamra and William Adams assert that due to the fact the common pleas court did not make a finding that the natural parents were unfit custodians of the child, the juvenile court did not have subject matter jurisdiction over the case. Appellants Tamra and William Adams contend that R.C. 3109.04(D)(2) governed the certification from the common pleas court to the juvenile court in the case *sub judice.*

We note that contrary to appellants Tamra and William Adams's assertions in this appeal, the current version of the statute does not state that the court may certify the case if the court finds the parents are unfit; rather, the statute states that the court may certify the case if the court finds it is in the best interest of the child for neither parent to have custody. The statute looks to the best interest of the child, not the fitness of the parents.[4] The statute provides:

"If the court finds, with respect to any child under eighteen years of age, that it is in the best interest of the child for neither parent to be designated the residential parent and legal custodian of the child, it may commit the child to a relative of the child or certify a copy of its findings, together with as much of the record and the further information, in narrative form or otherwise, that it considers necessary or as the juvenile court requests, to the juvenile court for

---

4. In *Reynolds v. Goll* (1992), 80 Ohio App.3d 494, 609 N.E.2d 1276, the court traced the common-law and legislative vacillations between the best-interests test and the parental-unsuitability test. The *Reynolds* court noted that in 1974, the Ohio legislature amended R.C. 3109.04 to eliminate any consideration of the parents' suitability and instead focus on the best interest of the child.

Three years after the amendment to R.C. 3109.04, the Ohio Supreme Court held that when hearing an action between a parent and a nonparent, the juvenile court must consider the parent's suitability. *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047. In *In re Dunn* (1992), 79 Ohio App.3d 268, 607 N.E.2d 81, the court summarized the *Perales* decision by stating that it modified R.C. 3109.04 "by combining the best interests test and the prior suitability test."

further proceedings, and, upon the certification, the juvenile court has exclusive jurisdiction."

The plain language of R.C. 3109.04(D)(2) indicates it may be used to certify child custody cases to the juvenile court *only if* the common pleas court finds that it is in the best interest of the child for neither parent to have custody. A review of the record reveals the common pleas court made no such finding in the case *sub judice*. However, appellee Patricia Whaley's motion to certify sought certification pursuant to R.C. 3109.06. That statute, entitled "Certification to Juvenile Court," permits certification without a finding that it is in the best interest of the child for neither parent to have custody. R.C. 3109.06 provides in pertinent part:

"Any court, other than a juvenile court, that has jurisdiction in any case respecting the allocation of parental rights and responsibilities for the care of a child under eighteen years of age, * * * may, on its own motion or on motion of any interested party, with the consent of the juvenile court, certify the record in the case or so much of the record and such further information, in narrative form or otherwise, as the court deems necessary or the juvenile court requests, to the juvenile court for further proceedings; upon the certification, the juvenile court shall have exclusive jurisdiction."

Unlike the R.C. 3109.04(D)(2) certification process, the R.C. 3109.06 certification process does not require the certifying court to first find that it is in the best interest of the child for neither parent to have custody. We find that R.C. 3109.06 gave the common pleas court authority to certify the case *sub judice* to the juvenile court.

Appellants Tamra and William Adams argue that R.C. 3109.04(D)(2) is the only statute that could be used to transfer the case to the juvenile court. They argue that R.C. 3109.04(D)(2) is more specialized than R.C. 3109.06, and, hence, R.C. 3109.04(D)(2) controls over R.C. 3109.06. Appellants Tamra and William Adams, however, cite no authority to support their argument that the common pleas court could certify the case only pursuant to R.C. 3109.04(D)(2).

In *In re Height* (1975), 47 Ohio App.2d 203, 1 O.O.3d 279, 353 N.E.2d 887, the court held that the common pleas court may certify child custody matters to the juvenile court by utilizing the R.C. 3109.06 certification process. The court specifically noted that the R.C. 3109.06 certification process does not require a finding of parental unsuitability.

We find that R.C. 3109.04(D)(2) and R.C. 3109.06 provide two different certification processes for the common pleas court to use when certifying child

custody cases to the juvenile court.[5] Under the former statute the juvenile court must accept the certification; under the latter statute the juvenile court need not accept the certification. Under R.C. 3109.04(D)(2), if the common pleas court finds that custody to neither parent is in the best interest of the child, the juvenile court must accept the certification. Under R.C. 3109.06, the common pleas court (or any other court) may certify a child custody case to juvenile court, but only with the consent of the juvenile court. The 3109.06 certification does not require a finding by the common pleas court that custody to neither parent is in the best interest of the child.

Appellants Tamra and William Adams cite *State ex rel. Easterday v. Zieba* (1991), 58 Ohio St.3d 251, 569 N.E.2d 1028, for the proposition that the R.C. 3109.04(D)(2) certification process must be used in lieu of the R.C. 3109.06 certification process. We disagree with that proposition. We note that the common pleas court in *Easterday* attempted to certify the child custody issue to juvenile court after dismissing the parents' divorce action for failure to prosecute. The Ohio Supreme Court held that because jurisdiction of the common pleas court after a dismissal of a divorce case is governed by R.C. 3105.21(B),[6] and because that statute requires all child custody matters to proceed "in accordance with R.C. 3109.04," the common pleas court could use the R.C. 3109.04(D)(2) certification process, but could not use the R.C. 3109.06 certification process. In the case *sub judice*, we have no dismissal. Thus, R.C. 3105.21(B) does not limit the certification jurisdiction of the common pleas court.

In their briefs on appeal, appellee Patricia Whaley and appellee guardian *ad litem* Michael Mercer aptly distinguish *Easterday* from the case *sub judice*. They argue that the common pleas court properly utilized the R.C. 3109.06 certification process to certify the instant case to juvenile court. They further

---

5.  In *Lindon v. Lindon* (Dec. 21, 1989), Tuscarawas App. No. 89AP070058, unreported, 1989 WL 155730, the court acknowledged that the two separate certification processes exist. The court wrote:

    " * * * There are two methods by which issues involving children arising out of a divorce may find their way to juvenile court. When the common pleas court finds custody to neither parent to be in the best interests of the child, it may certify, without juvenile court consent, the issue of custody to the juvenile court. R.C. 3109.04(A), last paragraph. The juvenile court then acts pursuant to the jurisdictional grant of R.C. 2151.23(D).

    "The second procedure, implemented here, calls for agreed certification of the entire divorce case, including the custody issues. R.C. 3109.06, R.C. 2151.23(C)."

6.  The version R.C. 3105.21(B) in effect in *Easterday* provided:

    "Upon failure of proof of the causes in the complaint, the court may make the order for the disposition, care, and maintenance of any dependent child of the marriage as is in the child's best interest, and *in accordance with section 3109.04 of the Revised Code.*" (Emphasis added.)

    The *Easterday* court held the R.C. 3105.21(B) phrase "failure of proof" includes a dismissal for failure to prosecute.

argue that in the original dissolution decree, the common pleas court found it was in the child's best interest for neither parent to have custody. These two appellees apparently believe the common pleas court could have certified the case to juvenile court pursuant to either R.C. 3109.04(D)(2) or R.C. 3109.06.

■ Last, appellee Bernard Whaley and appellee guardian *ad litem* Michael Mercer argue that the juvenile court jurisdiction statute, R.C. 2151.23(D), governs the question of whether the juvenile court had subject matter jurisdiction in the case *sub judice*. They contend that any question of whether the common pleas court used the proper certification process does not affect the subject matter jurisdiction of the juvenile court. Consequently, they argue that the agreement by appellants Tamra and William Adams to have the case certified to the juvenile court waived any objections they now have concerning the certification process.

R.C. 2151.23(D) provides in pertinent part:

"The juvenile court has jurisdiction to hear and determine all matters as to custody and support of children duly certified by the court of common pleas to the juvenile court after a divorce decree has been granted, including jurisdiction to modify the judgment and decree of the court of common pleas as the same relate to the custody and support of children."

The statute limits the juvenile court's jurisdiction to those matters "duly certified." If a matter has not been duly certified, the statute does not give the juvenile court subject matter jurisdiction over that matter. Thus, we reject appellee Patricia Whaley and appellee guardian *ad litem* Michael Mercer's argument that a default in the certification process has no effect on the juvenile court's subject matter jurisdiction. We find support for our position in *Easterday*, where the Ohio Supreme Court granted a writ of prohibition preventing the juvenile court from ruling on a child custody matter. The Ohio Supreme Court reasoned that without proper certification from the common pleas court, the juvenile court lacked jurisdiction. The *Easterday* court wrote in pertinent part:

"Accordingly, with respect to the case before us, we hold that since Judge Zieba never made the finding *required to invoke the Lorain County Juvenile Court's jurisdiction*, his authority to proceed in the matter ended when he dismissed the Easterday divorce case." (Emphasis added.) *Id.*, 58 Ohio St.3d at 256, 569 N.E.2d at 1033.

Accordingly, based upon the foregoing reasons, we overrule appellants Tamra and William Adams's first assignment of error.

## II

In their second assignment of error, appellants Tamra and William Adams assert that the trial court acted against the manifest weight of the evidence by awarding permanent custody of the child to her stepmother, appellee Patricia Whaley. Additionally, appellants Tamra and William Adams argue that the trial court should have given more weight to the fact the child has spent the majority of days with them.

Generally, in a child custody case a reviewing court should apply an "abuse of discretion" standard. In *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030, the court wrote:

"In general, when reviewing the propriety of a trial court's determination in a domestic relations case, this court has always applied the 'abuse of discretion' standard. This has been true in cases reviewing an order relating to alimony, see *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140; a division of the marital property, see *Martin v. Martin* (1985), 18 Ohio St.3d 292, 18 OBR 342, 480 N.E.2d 1112; or a custody proceeding, see *Miller v. Miller* (1988), 37 Ohio St.3d 71, 523 N.E.2d 846. Since it is axiomatic that a trial court must have discretion to do what is equitable upon the facts and circumstances of each case, see *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 355, 20 O.O.3d 318, 322, 421 N.E.2d 1293, 1299, it necessarily follows that a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment. * * * As this court has held many times, an ' "abuse of discretion" * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable. * * * ' See, *e.g. Blakemore, supra,* at 219, 5 OBR at 482, 450 N.E.2d at 1142."

█ . Thus, when reviewing a trial court's judgment in a child custody case, an appellate court's inquiry should focus on whether the trial court abused its discretion. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181; and *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *In re Jane Doe 1, supra; Berk v. Matthews* (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301; and *Buckles v. Buckles* (1988), 46 Ohio App.3d 102, 546 N.E.2d 950.

We further note that when reviewing evidence presented at trial, an appellate court must not reweigh the evidence. In *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus, the Ohio Supreme Court held:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." See, also, *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 566 N.E.2d 154; *Ross v. Ross* (1980), 64 Ohio St.2d 203, 18 O.O.3d 414, 414 N.E.2d 426.

An appellate court should not substitute its judgment for that of the trial court when there exists competent, credible evidence going to all the essential elements of the case.

■ In the case *sub judice,* we find that the record contains sufficient competent, credible evidence to support a finding awarding custody of the child to her stepmother, appellee Patricia Whaley. The evidence regarding appellants Tamra and William Adams reveals (1) that the child twice suffered burns from the kerosene heater at appellants' house; (2) that although their house burned in 1989, they began to install new drywall only shortly before the hearing; (3) that appellants ignored many recommendations from various people that they take the child to Beacon School and to daycare; and (4) that they did not comply with the common pleas court order requiring them to attend parenting skills training classes.

The record further reveals that appellee Patricia Whaley (1) attended many parenting skills training classes, (2) is a licensed foster home provider, (3) maintains a bedroom in her home for the child, and (4) also prepares nutritious meals and keeps an immaculate house. Also, during the time she and appellee Bernard Whaley had custody of the child, he often left the child in her care. We find no abuse of discretion.

Accordingly, based upon the foregoing reasons, we overrule appellants Tamra and William Adams's second assignment of error.

### III

In their third assignment of error, appellants Tamra and William Adams assert that the trial court committed prejudicial error by excluding relevant evidence bearing directly upon an important issue in the case. In particular, they complain the trial court erred by excluding (1) cross-examination testimony by appellee Patricia Whaley about alleged domestic violence committed by appellee Bernard Whaley, (2) direct examination testimony by appellant Tamra Adams about alleged statements the child made concerning possible abuse by appellee Bernard Whaley, and (3) direct examination expert opinion testimony by Kathleen Kutsko–Barnett about whether the visits with appellee Patricia Whaley help or hurt the child.

The admission or exclusion of relevant evidence is within the sound discretion of the trial court and its decision to admit or exclude such evidence cannot be reversed absent a showing of an abuse of that discretion. *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 569 N.E.2d 1056; *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 28 OBR 429, 504 N.E.2d 44; *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 19 OBR 123, 482 N.E.2d 1248.

Appellees argue that the evidence appellants Tamra and William Adams sought on cross-examination concerning alleged domestic violence and alleged abuse by appellee Bernard Whaley lacks relevance to the question of whether appellee Patricia Whaley or appellants Tamra and William Adams should have custody of the child. We agree. Appellee Bernard Whaley no longer resides with appellee Patricia Whaley. Appellants Tamra and William Adams presented no evidence linking any past violence or abuse to the present best interests of the child.

We agree with appellants Tamra and William Adams that the evidence might be relevant to the issue of whether the court should grant appellee Bernard Whaley's motion for visitation with the child. When we examine the transcript of the hearing below, however, we find no reversible error. The court excluded the testimony not on the basis of relevance, but rather on the basis that it was beyond the scope of cross-examination. We agree with the trial court. The direct examination did not address the question of whether appellee Bernard Whaley should have visitation with the child. The direct examination of appellee Patricia Whaley did not mention possible domestic violence by appellee Bernard Whaley.

The second and third items appellants Tamra and William Adams sought to introduce into evidence involved questions their counsel posed on direct examination. The record contains no proffer of what answers the witnesses would have given had the court permitted the questions. The substance of the evidence is not readily apparent from the context within which the questions were asked. Evid.R. 103(A) provides in pertinent part:

"Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

"(1) * * *

"(2) Offer of proof. In case the ruling is one excluding evidence, *the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.* * * *" (Emphasis added.)

Without proffers of the answers, we cannot determine whether the exclusion of the answer affected a substantial right of appellants Tamra and William Adams. Consequently, we find no reversible error concerning the fact the court did not

permit counsel for appellants Tamra and William Adams to ask appellant Tamra Adams about statements by the child concerning possible abuse by appellee Bernard Whaley and to ask Kathleen Kutsko–Barnett about whether the visits with appellee Patricia Whaley helped or hurt the child.

Accordingly, based upon the foregoing reasons, we overrule appellants Tamra and William Adams's third assignment of error.

## IV

In their fourth assignment of error, appellants Tamra and William Adams assert that the trial court abused its discretion by granting unsupervised visitation privileges to appellee Bernard Whaley.

Appellants Tamra and William Adams argue that the record contains evidence that appellee Bernard Whaley committed domestic violence against appellee Patricia Whaley before they were married, and committed domestic violence against the woman he lived with after he left Patricia Whaley. Appellants Tamra and William Adams cite *Bodine v. Bodine* (1988), 38 Ohio App.3d 173, 528 N.E.2d 973, for the proposition that unsupervised visits with a parent with a known history of domestic violence are not in the best interest of the child.

■ Parental rights of visitation are within the sound discretion of the trial court. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 541 N.E.2d 1028; *Appleby v. Appleby* (1986), 24 Ohio St.3d 39, 24 OBR 81, 492 N.E.2d 831. The trial court's discretion must be exercised in a manner which best protects the interest of the child. *Bodine, supra.* In *Booth* the court wrote:

" * * * [W]e believe that common sense and fundamental fairness compel the application of the 'abuse of discretion' standard in reviewing matter concerning child support and visitation rights."

As we noted earlier, an abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *In re Jane Doe 1, supra.* When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *Id.; Berk; Buckles, supra.*

■ In the case *sub judice*, after a review of the record and considering the totality of the circumstances, we fail to find an abuse of discretion. The record contains no evidence that the two incidents of domestic violence ever had an effect on the child. It appears the child was not present at either incident. Although some witnesses testified that they suspected appellee Bernard Whaley abused the child, no witness testified that any abuse had in fact occurred. Under the circumstances, we find that the court's decision to grant appellee Bernard

Whaley unsupervised visitation with the child was not unreasonable, arbitrary, or unconscionable. Additionally, the trial court possesses continuing jurisdiction to review the visitation order should the need arise.

Accordingly, based upon the foregoing reasons, we overrule appellants Tamra and William Adams's fourth assignment of error.

## V

Due to the fact appellant Catrina Stocky's first, second, and third assignments of error raise related issues, we will treat them jointly. In her first assignment of error, appellant Catrina Stocky asserts that the court erred by failing to ascertain whether she knew about her right to counsel and her right to have counsel appointed if she was indigent. In her second assignment of error, appellant Catrina Stocky asserts that the court erred by proceeding with the hearing when she had received no notice that custody of the child would be at issue. In her third assignment of error, appellant Catrina Stocky asserts that the lack of notice violated her due process rights granted by the Ohio Constitution and the United States Constitution.

Appellant Catrina Stocky relies upon Juv.R. 4(A) and R.C. 2151.352. The rule grants indigent parents who are parties in a juvenile case the right to be represented by appointed counsel:

"Right to counsel; when arises. Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding. * * * "

R.C. 2151.352 requires juvenile court judges to ascertain whether all parties know about their right to counsel and their right to appointed counsel if they are indigent:

"If a party appears without counsel, the court shall ascertain whether he knows of his right to counsel and of his right to be provided with counsel if he is an indigent person."

Appellant Catrina Stocky argues that the juvenile court recognized her as a "party without representation," yet failed to ascertain whether she knew about her right to appointed counsel if indigent. Appellant Catrina Stocky further argues that her lack of representation, combined with her misunderstanding about the nature of the proceedings, caused her prejudice. She contends that she thought the proceedings were merely about visitation. She argues that if she had known there was a chance appellants Tamra and William Adams might have lost custody of the child, she would have sought custody for herself.

Appellee Patricia Whaley and appellee Bernard Whaley, in their briefs on appeal, argue that due to the fact appellant Catrina Stocky had twice previously voluntarily relinquished custody, she is not a real party at interest in the case *sub judice,* and, hence, not entitled to the right to counsel of Juv.R. 4(A) or R.C. 2151.352. Appellant Catrina Stocky first relinquished custody when, in her dissolution decree, she agreed to place custody with appellants Tamra and William Adams. At the March 25, 1991 hearing in the common pleas court, appellant Catrina Stocky agreed to the change of custody of the child from appellants Tamra and William Adams to appellee Bernard Whaley. Both these appellees further note that the common pleas court referee had previously advised appellant Catrina Stocky of her right to counsel.

Appellee guardian *ad litem* Michael Mercer argues that appellant Catrina Stocky is a party entitled to the Juv.R. 4(A) right to counsel. He concedes:

"[I]t could be viewed as somewhat troublesome that the juvenile court was not especially careful to assure that Catrina was aware of her right to have counsel."

Appellee guardian *ad litem* Michael Mercer further argues, however, that since the child was not alleged to be unruly, delinquent, dependent or neglected, the R.C. 2151.352 requirement (that the court ascertain whether the parties are aware of their right to counsel) does not apply.

At least one court has agreed with appellee guardian *ad litem* Michael Mercer that the R.C. 2151.352 counsel provisions do not apply in all juvenile court cases. See *Fortney v. Hines* (Oct. 31, 1990), Tuscarawas App. No. 90AP020018, unreported, 1990 WL 173358; and *Lindon v. Lindon* (Dec. 21, 1989), Tuscarawas App. No. 89AP070058, unreported, 1989 WL 155730. In *Fortney,* the Fifth District Court of Appeals wrote:

"Both parties direct us to *Lindon v. Lindon* (Dec. 21, 1989), Tuscarawas App. No. 89AP070058, unreported, 1989 WL 155730, wherein we held:

" 'Certification of a divorce case to juvenile court, per R.C. 2151.23(C) does not automatically trigger application of the right to counsel provisions of R.C. Section 2151.352.

" 'The generic code section, R.C. 2151.35, provides the procedure to be followed in status cases, i.e., matters involving delinquency, unruliness, juvenile traffic offenders, dependency, abuse, and neglect. The clear legislative intent is that the 'right to counsel' provisions of R.C. 2151.352 apply to cases on this track, for which jurisdictional authority is granted and * * * R.C. 120.33 does not require the appointment of counsel upon certification.'

"Appellant invites us to reverse *Lindon,* while defendant asks us to overrule this assignment of error on the authority of *Lindon.* We choose to adhere to our holding in *Lindon* * * *. The right to counsel provisions * * * only apply to

status cases involving delinquency, unruliness, juvenile traffic offenders, dependency, abuse, and neglect. * * * Juv.R. 4(A), although a procedural rule, applies to those cases outside the scope of R.C. 2151.352. Thus, Juv.R. 4(A) does not conflict, limit or enlarge the substantive rights under R.C. 2151.352; it merely applies to different types of cases."

In the case *sub judice,* we need not determine whether we agree with the Fifth District's decisions in *Fortney* and *Lindon* that R.C. 2151.352 does not apply to child custody cases certified to a juvenile court from a common pleas court. We also need not determine whether appellant Catrina Stocky qualifies as a "party" as that term is employed by R.C. 2151.352 and Juv.R. 4(A). We find that under the circumstances of this case, appellant Catrina Stocky suffered no prejudice as a result of her lack of counsel or lack of notice.

Despite appellant Catrina Stocky's assertions that she did not receive some notices about the case, she did attend the hearing. Despite her assertions that she did not realize that the hearing involved a motion for change of custody, the record of the hearing contains ample indications that the hearing included the custody motion. On the first page of the transcript, the court explained:

"Court: Uh, *this is a hearing on the custody of a child, Brandy Marie Whaley,* this is case number 24886. Uh, present in court is Mr. Jim Sillery, representing *Patricia Whaley who is the movant wanting custody.*" (Emphasis added.)

The first witness to testify during the hearing was appellee Patricia Whaley. The attorneys asked her and the other witnesses many questions pertaining to whether appellants Tamra and William Adams or appellee Patricia Whaley should have custody of the child. Under the circumstances, we believe no reasonable person would mistake the nature of the hearing. We note that even appellee Bernard Whaley's motion for visitation, which appellant Catrina Stocky admits she received, mentioned the "pending custody proceedings."

During the hearing, after appellant Catrina Stocky had heard many references to the custody question, appellee guardian *ad litem* Michael Mercer asked appellant Catrina Stocky if she had any intentions of seeking custody of the child:

"Mr. Mercer: Catrina do you have any intentions at all at anytime of asking for custody of Brandy?

"A. No."

Appellant Catrina Stocky explained that she preferred that the child remain with appellants Tamra and William Adams. Appellee guardian *ad litem* Michael Mercer later testified that during his investigation of the case, "[t]he biological father and mother were very up front with me that they did not want custody of this child."

Accordingly, based upon the foregoing reasons, we overrule appellant Catrina Stocky's first, second, and third assignments of error.

## VI

In her fourth assignment of error, appellant Catrina Stocky asserts that the court erred by awarding custody to a nonparent without specifically finding the parents to be unsuitable to have custody. Appellant Catrina Stocky relies upon *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047, syllabus, where the court held that in a custody proceeding between a parent and a nonparent, the court may not award custody to the nonparent without first finding the parent unsuitable.

Appellee Patricia Whaley and appellee Bernard Whaley aptly note that the case *sub judice* does not involve a custody proceeding between a parent and a nonparent. Both parents, appellant Catrina Stocky and appellee Bernard Whaley, have voluntarily relinquished custody of the child. The custody proceeding in the case *sub judice* involves only nonparents. We agree that the court did not need to make a finding of parental unsuitability prior to awarding custody to appellee Patricia Whaley. See, also, *Masitto v. Masitto* (1986), 22 Ohio St.3d 63, 22 OBR 81, 488 N.E.2d 857; *In re Whiting* (1990), 70 Ohio App.3d 183, 590 N.E.2d 859; *Carcifero v. Carcifero* (Feb. 6, 1991), Hamilton App. No. C–890572, unreported, 1991 WL 16045.

Accordingly, based upon the foregoing reasons, we overrule appellant Catrina Stocky's fourth assignment of error.

*Judgment affirmed.*

STEPHENSON and HARSHA, JJ., concur.