DECISION AND JUDGMENT ENTRY
This is an appeal from the Ross County Court of Common Pleas, Juvenile Division, which awarded legal custody of Zachary Congrove and Kambrah Himelrick to their great-grandmother, Naomi Cottrill. The appellants, Tameron Himelrick (the children's mother) and Ervin Himelrick (Kambrah's father and Zachary's stepfather) assign the following errors:
 I. The trial court erred, to the prejudice of the appellants, by not extending the temporary custody order pursuant to R.C. 2151.415 (D) (2).
 II. The trial court erred, to the prejudice of the appellants, by reducing their companionship rights and by not increasing companionship rights with their children.
 III. The trial court abused its discretion, to the prejudice of the appellant-father, by not calculating his child support obligation pursuant to the mandatory provisions of R.C. 3113.21, et seq.
We find none of the assignments meritorious and affirm the juvenile court's judgment.
 I.
In June 1997, the Ross County Children's Services Board ("RCCS") filed a juvenile court complaint alleging that Zachary (d.o.b. 10/23/88) and Kambrah (d.o.b. 9/3/92) were dependent children within the meaning of R.C. 2151.04.[1] At the time the complaint was filed, the children's mother, Tameron, was incarcerated at the Marysville Correctional Center for up to three years on a parole violation relating to a previous robbery conviction. The complaint alleged that Zachary's father, Scott Congrove, had maintained little contact with Zachary and that Kambrah's father, Ervin, had a history of drug abuse. The complaint also indicated that Tameron's grandmother, Ms. Cottrill, had been caring for Zachary and Kambrah since March 1996.
Following an adjudicatory hearing, the juvenile court determined that Zachary and Kambrah were dependent children and ordered them placed in the temporary custody of Ms. Cottrill. See R.C. 2151.353 (A) (2). The court also provided visitation rights for Ervin, allowing him to visit with Kambrah each week. RCCS prepared a case plan, which called for Tameron and Ervin to refrain from drug and alcohol abuse and to submit to random drug testing by RCCS. The appellants did not sign the case plan. Tameron did not participate in the case plan due to her incarceration and Ervin refused to sign the case plan because he denied using illegal drugs. Pursuant to R.C. 2151.353 (D) and R.C. 2151.412 (D), the court journalized the case plan as part of its dispositional order granting temporary custody of the children to Ms. Cottrill. There was no appeal from the juvenile court's dependency adjudication and disposition.
In June 1998, the Ross County prosecutor filed a motion on RCCS's behalf to extend the court's temporary custody order for an additional six months. Attached to the motion was a letter from a RCCS caseworker to the prosecutor's office. The letter indicated that Ervin moved to Toledo without informing RCCS and had "no showed to his visits with Kambrah because of this move." The caseworker also indicated that Tameron was released from prison in May 1998 and was living in Dayton, but had not made any arrangements to visit the children. Before the court conducted a hearing on the RCCS motion, Ms. Cottrill sought an order granting her legal custody of Zachary and Kambrah. Ms. Cottrill's motion stated that the children had been living with her in a "stable, loving environment" since March 1996. Ms. Cottrill also alleged that the children's parents had had "little contact" with the children since they began living with her and that the parents had provided "virtually no assistance for them, either financially or emotionally." The RCCS later withdrew its own motion and joined Ms. Cottrill's motion for legal custody.
The juvenile court conducted a two-day hearing on Ms. Cottrill's motion in February 1999. In the weeks prior to the hearing, the appellants agreed to a new case plan with RCCS, calling for them to visit regularly with the children, submit to random drug testing, and establish a stable home and employment situation. Despite regular visits and child support payments by the appellants in January and February 1999, the magistrate recommended granting Ms. Cottrill's motion. The juvenile court agreed with the magistrate's recommendation, over the appellants' objections, and granted Ms. Cottrill legal custody of Zachary and Kambrah. The court also decided that the appellants were entitled to visitation with the children for four hours every two weeks. The appellants then commenced this appeal.
 II.
In, their first assignment of error, the appellants argue that the trial court should have extended its temporary custody order rather than grant legal custody of the children to Ms. Cottrill. They insist that they had made significant progress on the RCCS case plan since Tameron's release from prison, including Tameron's completion of a drug and alcohol rehabilitation program. The couple had also moved into an adequate house in Dayton and insisted they could provide for Zachary's and Kambrah's well-being. The appellants also insist that Ms. Cottrill actively sought to prevent reunifying them with the children. Based on all of these circumstances, the appellants argue that the juvenile court failed to comply with the "clear mandates" of R.C. Chapter 2151 by granting legal custody to Ms. Cottrill instead of taking steps to return the children to their parents "with all due speed."
In cases involving custody rights of minor children, "`the welfare of the minor child is first to be considered.'"In re Pryor (1993), 86 Ohio App.3d 327, 332 (emphasis sic), quoting Clark v. Bayer (1877), 32 Ohio St. 299, paragraph one of the syllabus. Thus, the goal of any disposition is that which will be in the best interest of the child. In reHitchcock (1996), 120 Ohio App.3d 88, 102, citing In re BabyGirl Baxter (1985), 17 Ohio St.3d 229. As a reviewing court, we will uphold a juvenile court's determination of what is in the "best interest of the child" so long as it is supported by competent, credible evidence. In re Pryor,86 Ohio App.3d at 339; In re Fanizzi (Oct. 30, 1996), Summit App. No. 17706, unreported.
In this case, the juvenile court adjudicated Zachary and Kambrah as dependent children and made a dispositional order authorized by R.C. 2151.353 (A) (2), i.e. granting temporary custody to Ms. Cottrill.[2] Just over a year later, the RCCS filed a motion to extend Ms. Cottrill's temporary custody over the children for an additional six months. See R.C. 2115.415 (A) and (D)(1).[3] The RCCS later withdrew this motion and joined Ms. Cottrill's motion for legal custody of Zachary and Kambrah. Ms. Cottrill filed her motion pursuant to R.C.2151.415 (F), which states:
 The court, on its own motion or the motion of the agency or person with legal custody of the child
* * *, may conduct a hearing with notice to all parties to determine whether any order issued pursuant to this section should be modified or terminated or whether any other dispositional order set forth in divisions (A) (1) to (5) of this section should be issued. After the hearing and consideration of all the evidence presented, the court, in accordance with the best interest of the child, may modify or terminate any order issued pursuant to this section or issue any dispositional order set forth in divisions (A) (1) to (5) of this section.
(Emphasis added.)
By asking the court to grant her legal custody of Zachary and Kambrah, Ms. Cottrill was requesting a modification of the court's original dispositional order. In other words, Ms. Cottrill wanted to have legal custody of the children as opposed to temporary custody.[4] The magistrate found, and the juvenile court agreed, that such a change was in the best interests of Zachary and Kambrah. The magistrate and court gave six main reasons for this conclusion: (1) the children had been living with Ms. Cottrill since March 1996 in a stable, loving environment; (2) the children's school behavior, attendance, and achievement had been "highly satisfactory" during their time living with Ms. Cottrill; (3) neither Ervin nor Tameron gave financial support for the children until the court ordered a wage withholding; (4) neither Ervin nor Tameron had completed the case plan proposed by RCCS; (5) the children expressed a desire to remain with Ms. Cottrill; and (6) neither Ervin nor Tameron had displayed consistency in providing a stable home for the children.
The appellants dispute several findings of fact, namely the court's finding that they had not complied with the RCCS case plan and its determination that the appellants were unable to display consistency in providing a stable home. The appellants correctly note that Tameron completed a drug rehabilitation program in Dayton following her release from the Marysville Correctional Center and presented testimony that Tameron was active in her church. They also note that they visited regularly with the children for several weeks prior to the hearing, just as the case plan called for them to do. The appellants further emphasize that their living situation had changed dramatically during 1999. For example, Tameron went back to community college to resume her education while Ervin was steadily employed. Moreover, a caseworker from RCCS confirmed that the appellants were living in a decent two-bedroom home in Dayton. The appellants also take issue with the court's decision in light of Ms. Cottrill's actions. According to the appellants, Ms. Cottrill sought to prevent reunification between them and the children by denying visitation to Ervin on at least three occasions and by refusing to take Tameron's phone calls. Given all of these factors, particularly in light of R.C. 2151.412's stated goal of reunifying children with their families, the appellants argue that the trial court's grant of legal custody to Ms. Cottrill must be reversed. After a thorough review of the record, we are unable to agree with the appellants.
As noted previously, the paramount consideration in child custody dispositions is the best interest of the children involved. In making this determination, we are mindful that the lower court (and, in this case, the magistrate) is in the best position to observe the witnesses and parties and to weigh the evidence accordingly. See Reynolds v. Goll (1996),75 Ohio St.3d 121, 124; In re McDaniel (Feb. 11, 1993), Adams App. No. 92CA539, unreported. As a reviewing court, we are therefore "guided by the presumption that the trial court's findings were indeed correct." Reynolds at 124, citingSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
There is competent, credible evidence in the record to support the court's finding that legal custody to Ms. Cotrill was in the children's best interest. There was testimony from various witnesses indicating that the children were well-adjusted to their home and school surroundings. The record showed that the children performed quite well in school and that their school performance was partly attributable to the stability in their home environment. There was also testimony indicating that the children preferred to remain with Ms. Cottrill. Furthermore, we have no reason to dispute the finding by the court that Ms. Cottrill provided a loving home for her great-grandchildren and had done so since 1996.
In addition, the record contains competent, credible evidence supporting the negative findings made by the court concerning the appellants. Notwithstanding the progress made by the appellants since Tameron's release from prison, the record supports the view that the appellants had not displayed "consistency" in their efforts to provide a stable home and had not complied with the RCCS case plan. For instance, the appellants' regular exercise of visitation and payment of child support occurred only in the last several weeks leading up to the custody hearing. Prior to that, the appellants' visits were sporadic and their payment of child support was non-existent. Moreover, the appellants did not submit regularly to the random drug testing prescribed by the case plan, missing at least six appointments scheduled by RCCS. The consistent failure to submit to drug testing was particularly significant, given a history of drug use that included an overdose by the appellants in 1994 in the presence of the children. Although Tameron's completion of a drug rehabilitation program was commendable, the trial court was in a much better position to weigh that against the repeated failures to comply with the RCCS case plan. Based on the record before us, we are unable to quarrel with the findings made by the juvenile court.
We are also unpersuaded by the appellants' allegations that Ms. Cottrill openly rebuffed their efforts at contacting Zachary and Kambrah. Assuming arguendo that Ms. Cottrill wrongfully refused to grant visitation to Ervin on three occasions, the record still shows that the appellants were lackadaisical in their efforts to visit with the children at other times.[5] Further, Tameron's evidence of phone calls to Ms. Cottrill's residence was inconclusive at best and did not support Tameron's unsubstantiated speculation that Ms. Cottrill was dodging her calls to prevent telephone contact with the children. The trial court was in the superior position to weigh the credibility of the appellants' allegations and determine how they affected the children's best interest.
In addition to challenging the court's factual findings, the appellants complain that the award of legal custody to Ms. Cottrill undermines the statutory emphasis on reunification. The appellants assert that all case plans have a general goal to "[w]ith all due speed eliminate the need for the out-of home placement so that the child can return home * * *" R.C.2151.412 (F) (1) (b). They also note that R.C. 2151.415 (D) (2) contemplates reunifying children in temporary custody with their parents within a reasonable period of time. The appellants seem to argue that these statutes placed a duty on the juvenile court to view reunification as a paramount priority. The appellants' reliance on these statutes is misplaced. First, R.C. 2151.412 (F) (1) "sets forth guidelines, not mandates." In re Jones (June 8, 1995), Franklin App. No. 95APF01-36, unreported. The best interest of the child, which may or may not include reunification, remains the ultimate priority. Id. See, also, In re Hiatt (1993), 86 Ohio App.3d 716,722 (noting that R.C. 2151.412 provides "precatory" and not "mandatory" guidelines). Second, the appellants place undue emphasis on R.C. 2151.415 (D). That section calls for an agency to establish progress toward reunification when it seeks an extension of temporary custody. See R.C.2151.415 (D) (2). RCCS did not seek an extension of temporary custody in this case; instead, it joined Ms. Cottrill's motion for legal custody. When this type of disposition is sought, the best interest of the child is the court's principal concern. See R.C. 2151.415 (B) and (F). Finally, we disagree with the appellants' implication that the juvenile court ignored reunification as an option. The court's factual findings indicate that the appellants had not displayed the ability to provide a consistently stable living situation for Zachary and Kambrah. It therefore appears that the juvenile court implicitly assessed the possibility of reunification by addressing the appellants' fitness to regain custody of their children.
The juvenile court correctly applied a "best interest of the child" standard and we find no reversible error in its determination that legal custody to Ms. Cottrill was in the best interest of Zachary and Kambrah. We therefore overrule the first assignment of error.
 III.
In their second assignment, the appellants assert that the juvenile court erred by "reducing their companionship rights."[6] They argue that frequent and continuing visitation is in the children's best interest and that the juvenile court's decision does not provide for that.
Parental rights of visitation are within the sound discretion of the trial court. See Appleby v. Appleby (1986),24 Ohio St.3d 39, 41. Accordingly, we will not overturn a court's order regarding visitation absent an abuse of discretion. A court does not abuse its discretion unless it acts unreasonably, arbitrarily, or unconscionably. In reWhaley (1993), 86 Ohio App.3d 304, 314. Further, when assessing whether a lower court abused its discretion, a reviewing court is not free to merely substitute its judgment for that of the trial court. Id., citing In re Jane Doe 1
(1991), 57 Ohio St.3d 135.
When it granted legal custody to Ms. Cottrill, the juvenile court decreed that the appellants "shall be entitled to visits in the home of the custodian every two weeks, on Sundays, from 12:00 noon to 4:00 p.m., or at such times as the parties may agree." The court also noted that the parties could arrange for any other visitation. We find nothing arbitrary or unreasonable about this order. The appellants were living in Dayton at the time of the hearing and did not own their own car. Thus, the juvenile court may have ordered visitation every other week because it could not reasonably expect any more than that given the appellants' potential transportation difficulties. Further, the juvenile court left the door open for the parties to work out further visitation among themselves. This was also reasonable given the testimony from Ms. Cottrill and the appellants that the parties had done just that during the weeks leading up to the hearing. Thus, the court's order may have reflected its minimum expectation for visitation, with the knowledge that the parties would provide for more. Furthermore, the juvenile court possesses continuing jurisdiction to review the visitation order should the need arise. In re Whaley,supra, 86 Ohio App.3d at 318.
We find nothing arbitrary, unreasonable, or unconscionable about the court's order concerning visitation. The second assignment of error is overruled.
 IV.
In the final assignment, Ervin alleges that the juvenile court erred in its calculation of his child support obligation. Our review of the record, however, reveals that child support is not an issue properly before us on this appeal. The order appealed by the appellants deals solely with the juvenile court's decision on Ms. Cottrill's motion for legal custody and the visitation issues related to that order. Because that order did not address child support issues, we have no jurisdiction to review them here. Should Ervin wish to reduce his child support obligation, he would first have to seek modification in the juvenile court. The third assignment of error is overruled.
Having overruled each of the appellants' assignments of error, the judgment of the juvenile court is affirmed.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY 
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
ABELE, J. EVANS, J.: Concur in Judgment and Opinion.
For the Court
 BY: _________________________ William H. Harsha, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutesa final judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[1] Under R.C. 2151.04, "`dependent child' means any child:
"(A) Who is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian;
"(B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian;
"(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;
"(D) To whom both of the following apply:
"(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
"(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household."
[2] R.C. 2151.353, 2151.412, and 2151.415 were amended effective March 18, 1999. The hearing on Ms. Cottrill's motion took place on February 23 
24, 1999. Thus, the former versions of these statutes were effective on the date of hearing. All references to these statutes therefore refer to the former versions.
[3] The juvenile court ordered temporary custody to Ms. Cottrill pursuant to R.C. 2151.353 (A) (2). This temporary custody order expired one year after the date RCCS filed the dependency complaint unless a timely motion for a further dispositional order was filed under R.C. 2151.415. See R.C. 2151.353 (F); see, also, In re Davis Ashley (Nov. 5, 1999), Pickaway App. Nos. 99CA20, 99CA21, unreported. No party has raised an issue concerning the potential significance of the statutory expiration of the court's temporary custody order. But, see, In re Young children (1996), 76 Ohio St.3d 632
(holding that juvenile court retains jurisdiction to make further dispositional orders notwithstanding the statutory expiration of temporary custody order under R.C. 2151.353 (F)).
[4] "Legal custody" is defined as "a legal status that vests in the custodian the right to have physical care and control of the child and to determine whether and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." R.C. 2151.011 (B) (17). On the other hand, "temporary custody" is defined as "legal custody of a child who is removed from the child's home, which custody may be terminated at any time at the discretion of the court or, if the legal custody is granted in an agreement for temporary custody, by the person who executed the agreement." R.C. 2151.011 (B) (46). Thus, "temporary custody" is, by definition, a form of "legal custody." A crucial difference between the two, however, is that "legal custody" contemplates a more permanent custodial status for the children vis-a-vis the custodian. See R.C. 2151.42 (B). We also note that "legal custody" is different from "permanent custody." The latter refers to a "legal status that vests in a public children services agency or private child placing agency, all parental rights, duties, and obligations * * *." R.C. 2151.011 (B) (26). Thus, "permanent custody" under R.C. Chapter 2151 may be vested only with an agency. Furthermore, "permanent custody" divests the natural parents of all
parental rights, privileges, and obligations. Id. In contrast, parents retain certain parental rights and responsibilities (e.g.
visitation and payment of support) when their children are in the "legal custody" of another.
[5] It appears that Ms. Cottrill denied visitation to Ervin because of her concern that Ervin was not complying with the case plan. The record indicates that Ms. Cottrill was primarily concerned with Ervin havingunsupervised visitation without complying with the case plan.
[6] We note that the appellants' characterization of the juvenile court's order as "reducing" companionship rights is not completely accurate. Ervin had a right to weekly visitation with Kambrah pursuant to a court order. Thus, Ervin can accurately argue that his visitation rights were "reduced" to one four-hour visit every two weeks. However, Tameron had no court-ordered visitation prior to the hearing on Ms. Cottrill's motion because she was incarcerated at the time the juvenile court first ordered temporary custody. Thus, any visitation ordered at the final hearing was not a "reduction" in any previous court-ordered visitation. Nevertheless, we analyze the appellants' assignment of error as an argument that the court should have ordered more visitation than it did.