DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Matthew Harris, appeals the judgment of the Lorain County Court of Common Pleas denying his petition for visitation. We affirm.
 I. {¶ 2} Mr. Harris has been incarcerated since August 2000. Appellee, Melissa Harris, is Mr. Harris' former wife and the mother of his two children. Ms. Harris took the couple's children to visit their father at prison until 2001. After Ms. Harris stopped taking the children for visitation, Mr. Harris' parents took the eldest child to see his father. Ms. Harris refused to allow Mr. Harris' parents to take the children to visit their father in prison after May 2002.
 {¶ 3} On August 20, 2003, Mr. Harris, an inmate at the Mansfield Correctional Institute, filed a petition seeking visitation rights with his two children. On January 5, 2005, Mr. Harris' parents filed a motion to intervene for grandparent visitation. The parties' eldest son testified at an in camera hearing held on December 9, 2003, before Magistrate Arredondo. Magistrate Arredondo held a hearing on both motions in the Lorain County Court of Common Pleas on February 10, 2004 wherein Ms. Harris, Mr. Harris' parents and Mr. Harris' friend testified. Magistrate Arredondo issued an opinion from the bench, denying Mr. Harris' motion for visitation on the grounds that it was not in the best interest of the children to visit their father while he is incarcerated. On February 11, 2004, the court entered an order granting the grandparents' motion for visitation.
 {¶ 4} Mr. Harris filed objections to the Magistrate's Order on February 20, 2004. The trial court reviewed Mr. Harris' objections and entered an order on July 27, 2004, rejecting Mr. Harris' objections. In its July 27, 2004 order, the court noted that transporting a young child to a prison on a regular basis raises an inference of harm to the child such that the visitation is not in the best interest of the child. The court also remarked that this inference can only be rebutted upon proof that visitation with the parent will not be harmful to the child, but will be in the child's best interest. The court observed that Mr. Harris presented no testimony, other than the testimony of his family members, that visitation was in the children's best interest. Mr. Harris timely filed his notice of appeal on August 13, 2004, asserting two assignments of error. Ms. Harris did not file a brief and as such, we can accept Mr. Harris' statement of facts as correct and reverse the judgment if Mr. Harris' brief reasonably appears to sustain such action. See App.R. 18(C).
 II. First Assignment of Error
"THE TRIAL COURT ERRED IN DENYING [MR. HARRIS'] PETITION FOR VISITATION WITH [HIS] CHILDREN."
 {¶ 5} In his first assignment of error, Mr. Harris claims that the court erred in denying his petition for visitation because such visitation is in the children's best interest. Mr. Harris further argues that he has a natural right to assist in raising his children. We disagree.
 {¶ 6} A trial court's decision regarding visitation rights will not be reversed on appeal except upon a finding of an abuse of discretion. Boothv. Booth (1989), 44 Ohio St.3d 142, 144. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
 {¶ 7} In adjudicating visitation rights, the trial court must exercise its discretion in a manner that best protects the interest of the child.In re Whaley (1993), 86 Ohio App.3d 304, 317; Arnott v. Arnott, 9th Dist. No. 21291, 2003-Ohio-2152, at ¶ 31. R.C. 3109.051(A) provides:
"If a divorce, dissolution, legal separation, or annulment proceeding involves a child and if the court has not issued a shared parenting decree, the court shall * * * make a just and reasonable order or decree permitting each parent who is not the residential parent to have parenting time with the child at the time and under the conditions that the court directs, unless the court determines that it would not be in the bestinterest of the child to permit that parent to have parenting time with the child and includes in the journal its findings of fact and conclusions of law." (Emphasis added).
 {¶ 8} R.C. 3109.051(C) directs that a trial court's determination as to a non-residential parent's visitation rights shall be guided by the factors set forth at R.C. 3109.051(D). These factors include:
"(1) The prior interaction and interrelationships of the child with the child's parents * * *;
"* * *
"(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
"(4) The age of the child;
"(5) The child's adjustment to home, school, and community;
"* * *
"(7) The health and safety of the child;
"* * *
"(9) The mental and physical health of all parties;
"* * *
"(16) Any other factor in the best interest of the child." R.C.3109.051(D).
 {¶ 9} A noncustodial parent's right of visitation with his children is a natural right, although not absolute. Pettry v. Pettry (1984),20 Ohio App.3d 350, 352. Accordingly, such right should be denied only under extraordinary circumstances. Id. Once an extraordinary circumstance is established, the burden shifts to the parent seeking visitation who must demonstrate that visitation is in the child's best interest. Id.
 {¶ 10} This Court has held that imprisonment for a term of years constitutes an extraordinary circumstance. In the Matter of: Angel Durr
(Nov. 10, 1999), 9th Dist. No. 98CA007243, *14. Mr. Harris will be incarcerated until 2009. We must therefore determine whether the trial court abused its discretion in determining that visitation with Mr. Harris was not in the children's best interest.
 {¶ 11} The trial court was presented with the transcript of the Magistrate's hearing, which included testimony from Ms. Harris, Mr. Harris' parents and Mr. Harris' friend, as well as the transcript from the in camera proceeding. During the hearing before the Magistrate, Mr. Harris' counsel read a letter drafted by Mr. Harris in which he stated that his eldest child visited approximately every two weeks and was always excited to see his father and eager to return. Mr. Harris also indicated that he had very limited interaction with his youngest child as the child was born after Mr. Harris' incarceration.
 {¶ 12} Mr. Harris' parents testified that their grandson looked forward to visits with his father and was visibly upset that he was currently unable to see his father. The grandparents testified that visitation with Mr. Harris would be in the best interest of both children. However, Ms. Harris testified that although her eldest son wanted to see his father, he did not want to go to the jail. Ms. Harris further testified that she felt Mr. Harris was trying to "brainwash" their eldest son by telling him that he did not have to listen to his mother. More importantly, in his in camera proceeding, the parties' eldest child testified that he was "not scared to go to the jail" but that he did not want to go to the jail and preferred to wait until his father was out of jail to see him.
 {¶ 13} Upon thorough review of the evidence before the trial court and despite testimony to the contrary, we cannot conclude that the trial court abused its discretion in determining that visitation was not in the best interest of Mr. Harris' children. Mr. Harris' youngest child has virtually no relationship with his father while Mr. Harris' eldest child prefers to wait until his father gets out of jail to see him. Mr. Harris failed to establish that frequently transporting the children to prison until 2009 is in the children's best interest. Although Mr. Harris cannot visit with his children, the court's order permits Mr. Harris to send letters, cards, etc. to the children. We find that such interaction, while limited, is appropriate under the circumstances. Accordingly, Mr. Harris' first assignment of error is overruled.
 Second Assignment of Error
"[MR. HARRIS] WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT."
 {¶ 14} Mr. Harris argues that his counsel before the trial court was ineffective. More specifically, he asserts that his counsel should have presented expert testimony regarding the impact of visitation conducted in a prison setting on a child's development and psychology. Mr. Harris argues that his counsel failed to argue that such an expert should be appointed at the state's expense and that in failing to obtain such expert testimony at the state's expense, his attorney was ineffective. Moreover, Mr. Harris argues that he received ineffective assistance of counsel because his counsel failed to proffer Mr. Harris' testimony through depositions, written interrogatories or telephone and neglected to object to irrelevant and hearsay testimony offered at the hearing. We disagree.
 {¶ 15} The two-part test set forth in Strickland v. Washington
(1984), 466 U.S. 668, 687, 80 L.E.2d 674, to determine whether counsel's assistance was ineffective in criminal matters is also used in cases involving an incarcerated parent seeking visitation rights. In re Wise
(1994), 96 Ohio App.3d 619, 627; Angela Durr, supra at *14. To determine whether the parent's counsel was ineffective:
"First, the [parent] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the [parent] * * *. Second, the [parent] must show that the deficient performance prejudiced the defense. This requires a showing that counsel's error were so serious as to deprive the [parent] of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.
To establish prejudice, the parent must demonstrate that there is a reasonable probability that if not for the counsel's errors, the trial result would have been different. In re Wise, 96 Ohio App.3d at 628.
 {¶ 16} We find no error in the arguments and decisions of Mr. Harris' trial counsel. Mr. Harris has presented no evidence of specific testimony an expert would have proffered and failed to demonstrate "whether such an expert was available or what pertinent facts might have been garnered by such action." (Edits omitted). Angela Durr, supra at *16, quoting In reWise, 96 Ohio App.3d at 628.
"[A]lthough there are basic rights that the attorney cannot waive without the fully informed consent of the client, the lawyer has — and must have — full authority to manage the conduct of trial. The adversary process could not function effectively if every tactical decision required client approval." Angela Durr, supra, at *16, quoting Taylor v. Illinois
(1988), 484 U.S. 400, 417-18, 98 L.Ed.2d. 798.
Tactical decisions, such as whether to present Mr. Harris' testimony through a letter or through deposition, are generally within the discretion of the attorney. Angela Durr, supra, at *16. In this case, Mr. Harris' counsel made the decision to present his testimony through Mr. Harris' letter instead of through deposition or other means. Although Mr. Harris' counsel failed to object to testimony regarding his rape conviction, the basis for his conviction was not a fundamental factor of the court's decision. The court's decision to reject Mr. Harris' objections reflects considerable reliance on Mr. Harris' incarceration for a term of years and testimony from Ms. Harris and her eldest son. While the court may have considered hearsay testimony regarding conversations between the eldest child and his mother in reaching its decision, Mr. Harris has not demonstrated that there is a reasonable probability that the court would have reached a different result if his counsel had objected to this testimony. Mr. Harris' second assignment of error is therefore overruled.
 III. {¶ 17} Mr. Harris' two assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J., Moore, J. concur