DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Brian Collier has appealed from the judgment of the Wayne County Court of Common Pleas, Juvenile Division, which set a visitation schedule for Plaintiffs-Appellees Gary and Carol Harrold to see their granddaughter. This Court affirms.
 I {¶ 2} The facts giving rise to this litigation are tragic. For more than five years, a child's biological father has sought to preclude any visitation with the child's maternal grandparents — grandparents who raised and supported the child with the father's consent for the first five years of her life. The parties have gone through the appellate process numerous times, placing the child in the middle of a legal battle waged by her own father. This Court previously summarized the substantive facts as follows:
"Renee Harrold and Brian Collier were in a dating relationship, but the couple never married. They are the biological parents of one child, Brittany Collier, who was born to them on July 28, 1997. During her pregnancy, Renee was diagnosed with cancer and she chose not to undergo treatment until after Brittany's birth. Both Renee and Brittany lived with Renee's parents, Carol and Gary Harrold. On June 2, 1998, Renee and Brian submitted an agreement to the court concerning an allocation of parental rights between them for Brittany. The agreement designated Renee the sole residential parent and ordered a supervised visitation schedule for Brian with Brittany.
"Renee died of cancer on October 10, 1999, and her parents were designated Brittany's legal custodians on an ex parte basis on October 12, 1999. On October 21, 1999, Brian agreed to grant the Harrolds temporary legal custody of Brittany, and she continued to live with her grandparents. Brian has exercised his visitation rights with Brittany throughout her life. He also filed two motions with the court between 1998 and 2000 to modify his visitation sessions. In May of 2001, Brian filed a motion for full custody of Brittany. On December 12, 2001, the trial court held a modification of custody hearing among appellants, Carol and Gary Harrold, and appellee, Brian, awarding custody of Brittany to appellee." Harrold v. Collier ("Collier I"), 9th Dist. No. 02CA0005, 2002-Ohio-3864, at ¶ 2-3.
The order granting Appellant full custody of Brittany was stayed during the pendency of the appeal. The day this Court affirmed the grant of custody to Appellant, Appellant went to Appellees' home and removed Brittany. Appellant did not provide Appellees with time to pack Brittany's personal items. As such, Brittany left the home in tears with only the clothing she was wearing, without even a pair of shoes.
 {¶ 3} Following remand of Collier I on the issue of grandparent visitation, a magistrate granted Appellees visitation rights. Appellant refused to comply with the visitation schedule, was found in contempt, was sentenced to thirty days in jail, and served four days in jail. However, later in the proceedings, Appellant's objections to the magistrate's decision were sustained and Appellees' visitation rights were terminated. On appeal, this Court found that the trial court erred in concluding that the Ohio and U.S. Constitutions precluded awarding visitation to grandparents. See Harrold v. Collier ("CollierII"), 9th Dist. No. 03CA0064, 2004-Ohio-4331. This Court's determination was affirmed on appeal by the Ohio Supreme Court. See Harrold v. Collier ("Collier III"), 107 Ohio St.3d 44,2005-Ohio-5334. In affirming this Court's decision, the Ohio Supreme Court found R.C. 3109.11 and R.C. 3109.12 constitutional and concluded that under those statutes, "a trial court must give special weight to [the parents' wishes and concerns] in making its visitation determination[.]" Id. at ¶ 42.
 {¶ 4} Following the Ohio Supreme Court's decision, the matter was again placed before the trial court. On December 22, 2005, a hearing was held to determine a visitation schedule. Following the hearing, the trial court ordered a schedule which closely resembles the visitation a non-residential parent would receive during domestic relations proceedings. Appellant has timely appealed the trial court's order, raising two assignments of error for review. As Appellant's assignments of error are interrelated, we have consolidated them for review.
 II Assignment of Error Number One
"THE TRIAL COURT ERRED IN GRANTING TO THE APPELLEES THE STANDARD ORDER OF VISITATION OF THE COURT, AS SUCH VISITATION ORDER IS EXCESSIVE."
 Assignment of Error Number Two
"THE TRIAL COURT'S ORDER GRANTING TO THE APPELLEES THE STANDARD ORDER OF VISITATION WAS UNREASONABLE, ARBITRARY AND UNCONSCIONABLE."
 {¶ 5} In both his assignments of error, Appellant has asserted that the trial court erred when it set Appellees' visitation schedule. Specifically, Appellant has argued that the schedule closely resembles the schedule a non-residential parent would receive and is grossly excessive for grandparents. This Court disagrees.
 {¶ 6} A trial court's decision regarding visitation rights will not be reversed on appeal except upon a finding of an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 144. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 7} In adjudicating visitation rights, the trial court must exercise its discretion in a manner that best protects the interest of the child. In re Whaley (1993), 86 Ohio App.3d 304,317; Arnott v. Arnott, 9th Dist. No. 21291, 2003-Ohio-2152, at ¶ 31. Pertinent to our analysis, R.C. 3109.11 provides as follows:
"If either the father or mother of an unmarried minor child is deceased, the court of common pleas of the county in which the minor child resides may grant the parents and other relatives of the deceased father or mother reasonable companionship or visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and if the court determines that the granting of the companionship or visitation rights is in the best interest of the minor child. In determining whether to grant any person reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code. Divisions (C), (K), and (L) of section 3109.051 of the Revised Code apply to the determination of reasonable companionship or visitation rights under this section and to any order granting any such rights that is issued under this section."
In turn, R.C. 3109.051(D) provides sixteen factors which should be considered when determining whether a visitation schedule is in the child's best interest. Those factors include the child's relationship with the party seeking visitation, the child's age, the health and safety of the child, the parties' willingness to comply with court ordered visitation, and "[a]ny other factor in the best interest of the child." R.C. 3109.051(D)(1)-(16).
 {¶ 8} Pursuant to the above statutes, on December 22, 2005, the trial court set the following visitation schedule:
"Gary and Carol Harrold are granted visitation with Brittany Collier every other weekend from 6:00 p.m. Friday to 6:00 p.m. Sunday, beginning January 6, 2006. There shall be no mid-week visitation. Gary and Carol Harrold are granted Christmas Eve visitation from 1:00 to 9:00 p.m. on December 24, 2005. The parties shall obey Local Rule 11 of the Wayne County Juvenile Court for visits at other times as provided in the basic schedule of visitation."
Local Rule 11 of the Wayne County Juvenile Court apportions holiday visitation, evenly splitting visitation on eight significant holidays. In addition, the local rule grants five weeks of visitation during the child's summer vacation. Appellant has asserted on appeal that this visitation schedule is excessive and unreasonable.
 {¶ 9} On appeal, Appellant has not asserted that any analysis under R.C. 3109.051 supports reversal of the trial court's judgment. This Court notes that while the R.C. 3109.051 factors are primarily used to determine whether any visitation is appropriate, those same factors undoubtedly must be considered in determining whether the extent of the granted visitation is reasonable. Appellant, however, has not cited to any of the best interest factors in any portion of his brief. Rather, Appellant has alleged that the sheer amount of visitation time, in and of itself, requires reversal. Specifically, in his brief Appellant has asserted as follows: "It is unconscionable and unreasonable to grant to the maternal grandparents in this case the same Standard Order of Visitation to which a non-residential parent is entitled." (Emphasis omitted.) We disagree.
 {¶ 10} Appellant wholly ignores the factors contained in R.C.3109.051. While special weight is given to a parent's wishes, Appellant has never articulated his opposition to visitation. Rather, he has repeatedly asserted that "I have a right as a parent to make decisions on the care, custody and control for my child[.]" Appellant, however, testified that Brittany spends time with her paternal grandparents on a weekly basis and that such visitation causes him no concern. Accordingly, based upon his brief to this Court, Appellant has not identified a single rationale for finding the ordered visitation unreasonable. Furthermore, a review of the best interest factors contained in R.C. 3109.051 supports the trial court's ordered visitation schedule.
 {¶ 11} R.C. 3109.051(D)(1) requires the trial court to examine the "prior interaction and interrelationships of the child" with the child's parents, siblings, and person seeking custody. Under the instant facts, Brittany's relationship with the Harrolds is not adequately described by simply referring to it as a "close" relationship as Appellant has suggested. For the first five years of her life, Brittany lived with the Harrolds. From the ages of two to five, the Harrolds acted as Brittany's de facto residential parents. As noted above, Brittany's mother passed away when Brittany was two and until Appellant was granted custody, nearly three years later, the Harrolds were Brittany's legal custodians. To his credit, during that time period, Appellant faithfully exercised his visitation rights. Appellant, however, provided no evidence that the five year period Brittany lived with the Harrolds was detrimental to her development in any manner whatsoever. As the Harrolds functioned as Brittany's residential parents for a majority of her life, the trial court's visitation schedule awarding them visitation similar to that of a non-residential parent cannot be said to be unreasonable.
 {¶ 12} The remaining factors under R.C. 3109.051(D) further support the trial court's ruling. It is undisputed that the parties live in close geographic proximity, making regular visitation possible. R.C. 3109.051(D)(2). Furthermore, there is no evidence that Brittany's adjustment to home, school, or the community would be adversely affected by the trial court's visitation schedule. R.C. 3109.051(D)(5). Finally, R.C.3109.051(D)(13) provides as follows:
"Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court."
As noted above, Appellant spent four days in jail rather than complying with the trial court's ordered visitation. As such, Appellant has willfully denied the Harrolds' visitation despite court orders. We also find it relevant that when Appellant initially received custody, he went as far as to refuse to inform the Harrolds' of their granddaughter's new address, thereby precluding them from sending her even a card for the Easter holiday. See R.C. 3109.051(D)(16).
 {¶ 13} This Court is compelled to address a final claim raised by Appellant in his brief:
"Most preposterous, it would seem, is that Brittany is to be with Mr. Collier, her father, on each Father's Day, and presumably with the Harrold's on Mother's Day of each year, since the Harrold's must constitute the mother [under the ordered visitation]."
We see nothing preposterous about such a result. The Harrolds, as Renee's parents and Brittany's maternal grandparents, are Brittany's remaining link to her mother. We find nothing "preposterous" in the trial court's order that Brittany should spend a day designed to celebrate motherhood with the closest living relatives of her mother.
 {¶ 14} From the record before this Court, it is unclear what has caused Appellant's acrimonious feelings toward the Harrolds. It is clear, however, that Appellant's longstanding denial of visitation rights to the Harrolds has placed Brittany in the middle of the anger which he has directed and continues to direct toward the Harrolds. A review of the record indicates that the trial court properly considered the best interests of Brittany in reaching its decision and that Appellant's wishes were afforded the proper weight under Ohio law. Simply stated, the Harrolds functioned as Brittany's residential parents for nearly three years; they provided shelter for her for the first five years of her life; and, for the last three years, Appellant has deprived them of any visitation with her. Based upon the facts presented, we find nothing unreasonable in the trial court's determination that the Harrolds' visitation should approach that of a non-residential parent. Appellant's assignments of error lack merit.
 III {¶ 15} Appellant's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Carr, J. Moore, J. concur.