DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Jeffrey Morrow ("Father") appeals the judgment of the Medina County Court of Common Pleas, Juvenile Division, reducing his visitation and companionship time with his two daughters, Mo.S., born June 21, 2002, and Ma. S., born January 13, 2004.[1]
 {¶ 2} Father and Appellee, Sherri Becker ("Mother") are the unmarried parents of Mo.S. and Ma.S. Prior to the order that is the subject of this appeal, *Page 2 
Father exercised his visitation and companionship rights with Mo.S. and Ma.S., as the parties agreed and/or pursuant to a court order dated March 1, 2006, which provided that Father "shall have parenting time with his children as follows:
 "A. With [Mo.S.] and [Ma.S.] every other Wednesday from 6 P.M. until 9 A.M. the following morning (or such times as the parents may agree).
 "B. with [Mo.S.] the alternate weekend (from Wednesday visitation) from 6 P.M. on Thursday evening until 9 P.M. on Sunday (or at such times as the parties may agree).
 "C. with [Ma.S.] the Sunday he has parenting with [Mo.S.] from 11 A.M. until 9 P.M. (or such time as the parties may agree."
The March 1, 2006 Order did not address the Father's visitation rights on holidays and days of special meaning. The March 1, 2006 Order also denied Father's motion for shared parenting and awarded the above visitation rights, finding same to be in the best interests of Mo.S. and Ma.S. after consideration of statutory factors.
 {¶ 3} After the March 1, 2006 Order, the parties reconciled until December 2006. On January 17, 2007, subsequent to the parties ending their relationship, Father filed a motion titled "motion for modification of companionship/motion regarding school." The relevant portion of Father's January 17, 2007 motion sought a modification of the March 1, 2006 Order to include an order granting Father "companionship time with the minor children to include companionship for holidays, days of special meaning and summer vacation." *Page 3 
 {¶ 4} On March 21, 2007, Mother filed a motion to modify the March 1, 2006 order related to Father's Wednesday visitation schedule "due to a change in the mother's work schedule (effective March 5th) and Mr. Morrow's unwillingness to accommodate this change."
 {¶ 5} On April 23, 2007, the trial court conducted a hearing related to Mother's and Father's motions, hearing evidence from six witnesses. On April 26, 2007, the trial court issued the judgment entry that is the subject of this appeal ("Judgment Entry"). The Judgment Entry, as requested in Mother's March 1, 2006 motion, reduced Father's Wednesday parenting time with the girls to the weekday visitation schedule set forth in the Medina County Domestic Relations Court Standard Visitation Order ("Standard Visitation Order"). The Judgment Entry also ordered Father to have alternate weekend parenting time with Mo.S. per the Standard Visitation Order. This order in effect reduced Father's weekend visitation time with Mo.S. from 6:00 p.m. Thursday evening to 9:00 p.m. Sunday night on alternate weekends to 5:00 p.m. on Friday evening to 6:00 p.m. on Sunday on alternate weekends. The Judgment Entry also ordered holiday and days of special meaning visitation per the terms of the Standard Visitation Order, per Father's request in his January 17, 2007 motion. The Judgment Entry did not order extended summer visitation as set forth in the Standard Visitation Order. *Page 4 
 {¶ 6} Father timely appealed the portions of the Judgment Entry related to parenting time with both Mo.S. and Ma.S. on Wednesdays and weekend visitation with Mo.S.. Father raises one assignment of error.
 Assignment of Error "The trial court erred and abused its discretion by (1) sua sponte reducing the Father's weekend parenting time, companionship or visitation with [Mo.S.]; and (2) reducing the Father's Wednesday overnight parenting time, companionship or visitation with both of the parties' children." [Emphasis sic].
 {¶ 7} Father asserts that the trial court abused its discretion by: (1) sua sponte reducing his weekend parenting time with Mo.S.; and (2) granting Mother's motion to modify Father's Wednesday parenting time thereby reducing his Wednesday parenting time with both girls. Father asserts that the trial court was without authority to sua sponte modify the visitation schedule with Mo.S. and that neither modification was supported by legal authority or reference to the statutory factors. Father maintains that the trial court failed to consider the statutory factors.
 {¶ 8} "A trial court's decision regarding visitation rights will not be reversed on appeal except upon a finding of an abuse of discretion."Harrold v. Collier, 9th Dist. No. 06CA0010, 2006-Ohio-5634, at ¶ 6, citing Booth v. Booth (1989), 44 Ohio St.3d 142, 144. "An abuse of discretion is `more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'"Harrold at ¶ 6, quoting Blakemore v. Blakemore (1983), *Page 5 5 Ohio St.3d 217, 219. "When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court." Id., quoting Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. We must presume the findings of the trial court are correct because the trial judge is best able to observe the witnesses and use those observations in weighing the credibility of the testimony.Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 81.
 {¶ 9} Beginning first with Father's contention that the trial court was without authority to sua sponte modify his parenting time in such a manner as neither Father or Mother sought, Ohio courts have held that where an issue related to minor children is before the trial court, even if not in the form of a motion to modify visitation or custody, the trial court is bound by statute to consider the best interests of the children before making any determination. See Braden v. Braden, 5th Dist. No. 2006-P-0028, 2006-Ohio-6878, at ¶ 13 (finding trial court's sua sponte modification of visitation proper where a motion for custody and to show cause was before the court); Bouffard v. Bouffard (Feb. 14, 2001), 7th Dist. Nos. 00-CA-59 and 00-CA-44, at *2 (holding that contempt motion and motion to modify visitation permitted the trial court to sua sponte modify custody as being in the best interest of the children). We agree and find that the trial court is required to consider the best interests of the children whenever an issue related to the children is before the court. *Page 6 
 {¶ 10} The modification of Father's parenting time was before the trial court via Mother's motion to reduce Wednesday visitation and Father's motion to add visitation on holidays and days of special interest. Although the trial court modified Father's weekend parenting time in a manner not precisely sought by Mother or Father, the trial court was statutorily required to consider the best interests of Mo.S. and Ma.S. before making any determination as to visitation. As will be discussed below, we hold that the trial court properly found the visitation schedule set forth in the Judgment Entry to be in the best interests of Mo.S. and Ma.S..
 {¶ 11} Regarding the trial court's determination of Father's visitation rights, "[i]n adjudicating visitation rights, the trial court must exercise its discretion in a manner that best protects the interest of the child." Arnott v. Arnott, 9th Dist. No. 21291, 2003-Ohio-2152, at ¶ 31, citing In re Whaley (1993), 86 Ohio App.3d 304, 317,620 N.E.2d 954. R.C. 3109.051 "governs decisions as to visitation." Braatz v.Braatz (1999), 85 Ohio St.3d 40, 44. See, also R.C. 3109.12(B). "Pursuant to R.C. 3109.051(D), * * * the trial court shall consider the fifteen factors enumerated therein, and in its sound discretion determine visitation that is in the best interest of the child." Id.
 {¶ 12} Father contends that the trial court failed to properly consider the fifteen factors set forth in R.C. 3109.051(D) because it failed to reference them in the Judgment Entry. We disagree. R.C.3109.051(A) provides: *Page 7 
 "If a divorce, dissolution, legal separation, or annulment proceeding involves a child and if the court has not issued a shared parenting decree, * * * the court shall make a just and reasonable order or decree permitting each parent who is not the residential parent to have parenting time with the child at the time and under the conditions that the court directs, unless the court determines that it would not be in the best interest of the child to permit that parent to have parenting time with the child and includes in the journal its findings of fact and conclusions of law."
 {¶ l3} Similarly, R.C. 3109.051(C), which applies to parenting time decisions where there was not a divorce, dissolution, legal separation, or annulment, as is the case here, does not require the trial judge to make findings of fact and conclusions of law.
 {¶ 14} The trial court heard testimony during an April 23, 2007 hearing regarding parental visitation and the best interests of Mo.S. and Ma.S. In the Judgment Entry, the court modified the March 1, 2006 visitation schedule and partially reverted to the Standard Visitation Order. The trial court found: that "structure is in the best interests of the children." The court then ordered that "a review of the parenting time order would be reasonable once there has been sufficient time to determine how well the parents are able to cooperate with structure[.]" As noted above, R.C. 3109.051 does not require the trial court to make express findings of fact, especially where the trial court's order does not deny a parent visitation with a child, which the Judgment Entry did not do. We hold that the transcript presents ample evidence to support the trial court's decision and its consideration of the R.C. 3109.051(D) factors, which are: *Page 8 
 "(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
 "(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;
 "(3) The child's and parent's available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
 "(4) The age of the child;
 "(5) The child's adjustment to home, school, and community;
 "(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;
 "(7) The health and safety of the child;
 "(8) The amount of time that will be available for the child to spend with siblings;
 "(9) The mental and physical health of all parties;
 "(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;
 "(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a *Page 9 
neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 * * *
 "(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 "(14) Whether either parent has established a residence or is planning to establish a residence outside this state;
 * * * *
 "(16) Any other factor in the best interest of the child."
 {¶ 15} At the April 23, 2007 hearing, the trial court heard evidence from Father, Mother, and five witnesses on behalf of Mother. Both parties acknowledged that prior to December 2006, the parties had cooperated with each other regarding parenting time, holidays and days of special meaning, school choices for the girls, and other parenting decisions, primarily because the parties were dating. The parties did not follow a regular and consistent visitation schedule during this time. After the parties ended their relationship, however, things began to deteriorate and the parties could not agree and/or would not cooperate on most of the parenting decisions and acted inconsistently related thereto. This inability of the parties to cooperate was evidenced by the "he said, *Page 10 
she said" tone of Mother's cross-examination of Father, Father's responses thereto[2] and by the argumentative tone of the hearing in general.
 {¶ l6} During the hearing, Father admitted to arguing in front of Mo.S. on at least one occasion. There was testimony from other witnesses that Father cursed and/or yelled in front of his children on multiple occasions. Mother testified about an incident on Christmas Eve where Father yelled in front of the children related to confusion between the parties as to the visitation schedule.
 {¶ 17} On the issue of education, Father demonstrated limited knowledge of the curriculum of his choice of school for the girls (St. Francis), and limited knowledge of their current schooling. He did not know if any Down's syndrome children attended St. Francis, the school he wanted the girls to attend. Father denied the importance of the girls attending the same school and did not demonstrate that he understood the complexities of having children in two different schools. Father finally demonstrated that he had limited knowledge of many of the issues related to Ma.S. having Down's Syndrome and had not learned sign language to be able to communicate with Ma.S., where needed.
 {¶ 18} Most importantly, both parties acknowledged the importance of a definite schedule for the girls. Mother testified that there is an ongoing issue between her and Father regarding transportation to and from school and in the transition between parenting time, especially before and after the girls' overnight *Page 11 
Wednesday visitation. Mother testified that there were numerous times where Father would call at the last minute and indicate that he could not pick up one of the girls from school and/or before or after visitation. Mother demonstrated a thorough knowledge of Ma.S.'s special needs and the importance of a structured schedule.
 {¶ 19} Based on the foregoing evidence, it is clear that the trial court considered the factors set forth in R.C. 3109.051(D) and determined, using its sound discretion, that the visitation schedule set forth in the Judgment Entry was in the best interest of the children because it provided structure that the children needed. We cannot conclude that the trial court was unreasonable, arbitrary or unconscionable in reaching its decision.
 {¶ 20} Father's sole assignment of error is overruled.
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. *Page 12 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
MOORE, P. J. DICKINSON, J. CONCUR
[1] Ma.S. has special needs as she has Down's syndrome.
[2] Mother appeared pro se at the hearing.
 *Page 1