[Cite as *Ross v. Ross*, 2012-Ohio-2175.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STEVEN ROSS | | C.A. No. 26106 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| RENEE L. ROSS | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | | CASE No. 2004-05-1930 |

DECISION AND JOURNAL ENTRY

Dated: May 16, 2012

WHITMORE, Presiding Judge.

{¶1} Plaintiff-Appellant, Steven Ross ("Father"), appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms.

I

{¶2} Father and Renee Ross ("Mother") divorced in 2005 after seven years of marriage and the birth of their two boys: B.R., born in 2000, and N.R., born in 2002. The parties agreed to name Mother the residential parent and legal custodian for the boys. They further agreed that Father would not be permitted to visit with the boys alone, as Father was a sexual offender. Father's sexual offender designation arose from two convictions he received in 2004 for disseminating matter harmful to juveniles and voyeurism. The victim in both instances was Father's eleven year old step-daughter (Mother's daughter).

{¶3} In February 2011, Mother filed a notice of her intent to relocate to Tennessee and take the boys with her. Father opposed Mother's relocation, moved to modify his parenting time,

and requested a hearing. The hearing took place on August 5, 2011. Mother did not attend the hearing or have counsel when it occurred, but filed a letter with the court to express her concerns. The trial court ultimately overruled Father's motion to modify his parenting time and confirmed that it was within Mother's right to relocate to Tennessee. The court held that Father was entitled to monthly, supervised visits with the boys in Tennessee as well as weekly phone calls.

{¶4} Father now appeals from the trial court's denial of his motion and raises two assignments of error for our review. For ease of analysis, we consolidate the assignments of error.

II

Assignment of Error Number One

THE TRIAL COURT ERRED IN PERMITTING THE REMOVAL OF THE PARTIES' MINOR CHILDREN FROM OHIO.

Assignment of Error Number Two

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO MODIFY VISITATION.

{¶5} In his assignments of error, Father argues that the trial court erred by (1) permitting Mother to relocate with his children, (2) failing to consider all of the statutory factors to determine whether relocation was in the children's best interests, and (3) refusing to grant him additional visitation. We disagree.

{¶6} "A trial court's decision regarding visitation rights will not be reversed on appeal except upon a finding of an abuse of discretion." *Harrold v. Collier*, 9th Dist. No. 06CA0010, 2006-Ohio-5634, ¶ 6. An abuse of discretion implies that "the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). If,

however, a litigant challenges a particular factual finding of the trial court, this Court will review the trial court's factual conclusion for competent, credible evidence. *Szymczak v. Tanner*, 9th Dist. No. 10CA0101-M, 2012-Ohio-540, ¶ 19. "R.C. 3109.051(D) provides sixteen factors which should be considered when determining whether a visitation schedule is in the child's best interest." *Harrold* at ¶ 7.

{¶7}    If a residential parent decides to relocate, the parent must file a notice of his or her intent to relocate. R.C. 3109.051(G)(1). The non-residential parent then may ask the court to schedule a hearing "to determine whether it is in the best interest of the child to revise the parenting time schedule for the child." *Id.* Importantly, "R.C. 3109.051 does not grant the trial court authority to prohibit relocation by the residential parent." *Harris v. Harris*, 9th Dist. No. 06CA009056, 2007-Ohio-3123, ¶ 6. The statute simply permits a court to adjust visitation rights in light of the relocation. "Pursuant to R.C. 3109.051(D), * * * the trial court shall consider the [] factors enumerated therein, and in its sound discretion determine visitation that is in the best interest of the child." *Morrow v. Becker*, 9th Dist. No. 07CA0054-M, 2008-Ohio-155, ¶ 11, quoting *Braatz v. Braatz*, 85 Ohio St.3d 40, 44 (1999). Those factors include the geographical location of the parents, the age of the children, the health and safety of the children, the mental and physical health of all parties, each parent's willingness to facilitate visitation, whether either parent previously "has pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child," and "[a]ny other factor in the best interest of the child." R.C. 3109.051(D)(1)-(16).

{¶8}    Father first criticizes the trial court's judgment on the basis that the court did not consider all of the factors set forth in R.C. 3109.051(D). The court's judgment entry specifically indicates, however, that the court "considered the factors set forth in O.R.C. 3109.051(D)."

Although the court then limited its actual discussion of the R.C. 3109.051(D) factors to those factors it deemed to be relevant in its denial of Father's motion, the record does not support Father's assertion that the trial court failed to consider all of the factors. *See Bonner v. Deselm-Bonner*, 5th Dist. No. 10CA000033, 2011-Ohio-2348, ¶ 39 (explicit reference to R.C. 3109.051's factors unnecessary if "it is clear from the record the court considered the factors"). Moreover, Father never asked the court to make findings of fact and conclusions of law so as to explicitly reiterate its findings on each factor. *See Bentley v. Rojas*, 9th Dist. No. 10CA009776, 2010-Ohio-6243, ¶ 19. His argument that the trial court did not properly apply R.C. 3109.051(D) by considering all its factors lacks merit.

{¶9} Next, Father argues that the court abused its discretion in its determination that additional visitation time with him would not be in the children's best interests. There were only two witnesses who testified at the hearing: Father and Carol Miller, the Director of Family Visitation and Mediation Services. Miller testified that Father attended all the scheduled visits with his boys at the visitation center and appeared to have a good relationship with them. Miller specified that the boys were always excited to see Father. Miller testified that, in her opinion, the boys would benefit from additional visits with their Father and that she did not believe it was necessary for Father's visits to continue to be supervised. According to Miller, Mother was the one who remained adamant that visitation be supervised. Miller acknowledged that the source of Mother's concern stemmed from an incident that occurred in 2004/2005 and that Miller "really [didn't] know" any details about the incident.

{¶10} Father admitted that he pleaded guilty to criminal charges after secretly taping his minor step-daughter in various states of undress. Father testified that he received therapy for his problems and had not acted upon any impulses since the incident with his step-daughter. He

acknowledged, however, that he had an addiction to pornography and that he was "a peeping tom for some time." Father insisted that there was no reason for Mother to be concerned about the safety of their sons because Father "always had more of a female [attraction]" instead of a "male attraction or kid attraction." Yet, Father conceded at the hearing that his step-daughter was a child when he videotaped her.

{¶11} In the letter Mother filed with the trial court, she wrote that she did not want Father to have unsupervised visits with the children. Mother further wrote that it was a substantial financial burden for her to bring the children to meet Father because the trip was expensive and Father's child support payments were minimal. Mother expressed, however, a willingness to continue to allow Father to have visitation with the children in Tennessee, provided it was supervised by either herself or another supervisor of whom she approved.

{¶12} The trial court heavily stressed Father's criminal convictions in its decision to deny Father's motion as well as Father's admitted addiction to pornography. The court noted that both boys were still relatively young and that Father previously had committed offenses against a young member of his household. *See* R.C. 3109.051(D)(4), (11). Accordingly, the court considered the children's safety and health in its decision as well as Father's mental health. *See* R.C. 3109.051(D)(7), (9). The court also determined that, while Mother's relocation imposed a traveling hardship on both parties, visits in Tennessee were more feasible given Father's work schedule and the children's school schedule. *See* R.C. 3109.051(D)(2), (14). As such, the court held that monthly, supervised visits in Tennessee were workable along with weekly phone calls.

{¶13} Father argues that the trial court considered an improper factor in its judgment entry and failed to accord due weight to other factors. The trial court, in noting that Father

previously pleaded guilty to a sexual offense against a child who was a member of his household, cited R.C. 3109.051(D)(12). As Father correctly notes, that subsection only applies to visitation requested "by a person other than a parent," so it does not apply to Father. R.C. 3109.051(D)(12). The court erred by citing that subsection. Even so, the error appears to be clerical in nature because the subsection immediately preceding the one cited by the trial court applies to a parent previously convicted of a criminal offense "involving any act that resulted in a child being an abused child." R.C. 3109.051(D)(11). That section does apply to Father and is relevant to the trial court's analysis. Any error in the trial court's reference to subsection (D)(12) instead of (D)(11) is harmless.

{¶14} We also cannot conclude that the trial court abused its discretion in weighing the remaining factors set forth in R.C. 3109.051(D). Father argues that the court clearly failed to give due weight to certain factors, such as his positive interaction with the children, Mother's unwillingness to facilitate visitation, and the fact that Miller approved additional and unsupervised visitation. Undoubtedly, there was testimony at the hearing that Father's children enjoyed their visits with him and that Father had taken steps to address his issues with voyeurism and pornography. The only testimony that Father's issues were no longer of great concern, however, was Father's. Miller specifically admitted that she did not know the circumstances behind Father's criminal convictions. The trial court also expressed serious concern that Father minimized his problems by stating that he had never had an attraction to kids when, in fact, the person whom he victimized was a child. Moreover, Mother did not oppose facilitating visitation. She only opposed unsupervised visitation. Even the parties' original divorce decree provided that Father would not be permitted to seek unsupervised visitation with the children until his sexual offender registration status lapsed. Specifically, the decree provided that supervised

visitation "will continue so long as [Father] is labeled a sexual offender or until such time as the court ordered psychologist, Mike Smith, determines it is safe for [Father] to visit [the children] unsupervised." Smith did not testify at the hearing, and Miller's testimony was not a substitute for Smith's, as Miller did not testify as an expert. The record further reflects that Father had a duty to register for a ten-year period, so his status as a sexual offender is not set to expire until 2014.

{¶15} Given the testimony presented at the hearing, we cannot conclude that the trial court abused its discretion in its visitation determination. The fact that the trial court focused on the factors that cut against Father's motion instead of those that might have supported additional visitation does not mean that the court's decision was unreasonable, arbitrary, or unconscionable. The court exercised its discretion and determined that monthly, supervised visits were in the children's best interests. Father has not shown that the court abused its discretion in reaching that conclusion. Father's assignments of error are overruled.

III

{¶16} Father's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT

DICKINSON, J.
BELFANCE, J.
CONCUR.

APPEARANCES:

THOMAS J. LOCASCIO, Attorney at Law, for Appellant.

ROBERT C. BAKER, Attorney at Law, for Appellee.