[Cite as *Jenkins v. Jenkins*, 2019-Ohio-4909.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

TIMOTHY JENKINS, et al.

    Appellant

    v.

KELLY JENKINS, et al.

    Appellee

C.A. No.    18CA011414

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    17JG51004

DECISION AND JOURNAL ENTRY

Dated: December 2, 2019

---

HENSAL, Judge.

{¶1} Timothy and Kelli Jenkins appeal a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that denied their motion for grandparent visitation. For the following reasons, this Court affirms.

I.

{¶2} Mr. Jenkins is the maternal grandfather of a girl. Mrs. Jenkins is his wife and the girl's step-grandmother. Mother allowed them to have a relationship with the girl until September 2016 when the girl, who was five years old, reported that a 10-year-old boy relative who lives with the Jenkinses had touched her inappropriately. Following an investigation by Children Services, the case worker recommended to Mother that any interactions between the children be supervised.

{¶3} Mother did not trust the Jenkinses to provide appropriate supervision, so she attempted to arrange visits at other relatives' homes. Mr. Jenkins refused to schedule such

visitations. He also refused to attend counseling with Mother. Mother continued to allow telephone calls with the Jenkinses, but eventually stopped them because she believed the Jenkinses were using them to try to manipulate the girl.

{¶4} After Mother stopped communicating with the Jenkinses, they filed a motion for visitation under Revised Code Section 3109.12. Following a hearing before a magistrate, the magistrate determined that it was not in the best interest of the girl to have visitation with the Jenkinses. The trial court adopted its decision. The Jenkinses objected, but the trial court overruled their objections. The Jenkinses have appealed, assigning two errors.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT'S JUDGEMENT INCORPORATING THE MAGISTRATE'S DECISION IS AN UNCONSTITUTIONAL APPLICATION OF THE LAW BECAUSE IT PLACES THE MOTHER'S WISHES BEFORE THE MINOR CHILD'S BEST INTERESTS.

{¶5} The Jenkinses argue that the trial court incorrectly placed Mother's desires above the best interest of the girl. Initially, they argue that this violated their equal protection rights. Section 3109.12(A) provides that, if a child is born to an unmarried woman, any relative of the woman may request reasonable visitation rights with the child. Section 3109.12(B) provides that the court may grant such rights if it is in the best interest of the child. In making that determination, the court must consider "all relevant factors, including, but not limited to," the ones set forth in Section 3109.051(D). *Id.* We will not reverse a trial court's decision regarding visitation rights absent an abuse of discretion. *Harrold v. Collier*, 9th Dist. Wayne No. 06CA0010, 2006-Ohio-5634, ¶ 6.

{¶6} In *Troxel v. Granville*, 530 U.S. 57 (2000), the United States Supreme Court held that parents have the "fundamental right * * * to make decisions concerning the care, custody,

and control of their children." *Id*. at 66. In *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, the Ohio Supreme Court considered Section 3109.12 in light of *Troxel* and concluded that, although the statute is constitutional, "Ohio courts are obligated to afford some special weight to the wishes of parents of minor children when considering petitions for nonparental visitation * * *." *Id*. at paragraph one of the syllabus.

{¶7} Contrary to the Jenkinses' argument, nothing in *Troxel* or *Harrold* suggests that grandparents are similarly situated to parents. In fact, those cases recognize the opposite, which is that a child's parents must be afforded special consideration in determining the care and custody of the child. We, therefore, reject the Jenkinses' equal protection argument.

{¶8} The Jenkinses next argue that, although the trial court had to give deference to Mother's wishes, it gave her undue deference. They point out that Mother admitted that they had never harmed the child and never would. They argue that they had a loving and nurturing relationship with the child and that cutting them out of the child's life will cause her to suffer irreparable loss, dysfunction, and emotional disenfranchisement from the loss of her extended family. They argue that the trial court's decision is difficult to reconcile with the facts presented at the hearing, which established that their relationship with Mother has always been strained. Thus, the fact that it continues to be strained should not weigh in the best interest calculation. They argue that they have been responsive to many of Mother's wishes throughout the years and have provided financial support to her. They also provided childcare to Mother for entire weekends at a time so that Mother could engage in social activities, including the last time the girl was at their house. They also argue that the reason Mr. Jenkins refused counseling is because when he attempted to attend it, he discovered that Mother wanted to involve his ex-wife and work through issues from their divorce, which was 20 years ago. The Jenkinses further

argue that they cooperated with Children Services when it investigated the claims in their household, that they handled the investigation exactly as the agency thought they should, and that the agency took no action on the allegations.

{¶9} The magistrate found that Mr. Jenkins did not respect Mother's wishes regarding supervision of the girl's interactions with the boy, noting that he stated that he would do as he pleases in his own house regarding the girl. The trial court found that, although Children Services had closed its investigation, the boy remained in counseling for the raised issues. It also noted that the case worker who investigated the case recommended that any interaction between the boy and girl be supervised. The court noted that Mother did not trust that the recommendation would be adhered to in the Jenkinses' home in light of Mr. Jenkins's statement about how he would manage visits at his home. The court found that Mr. Jenkins refused to schedule visitations with the girl outside of his home, complaining that he did not need a babysitter. The court also found that Mr. Jenkins had refused to attend counseling with Mother and the girl, even though it had been recommended by Children Services. It further found that Mr. Jenkins was responsible for the failure of his telephone conversations with the child.

{¶10} Overall, the trial court determined that Mr. Jenkins's unwillingness to address Mother's concerns about interactions between the boy and girl was the main obstacle preventing the Jenkinses' contact with the girl. It found that the obstacle was within the Jenkinses' control, yet they were unwilling to address it or adopt the recommendations of Children Services. The court also found that any failure to address the issue between the boy and girl had serious potential for harm to the girl. It further found that Mother had made efforts to address the issue by offering to schedule visits at neutral locations and to attend counseling, but the Jenkinses had

rebuffed her attempts and, instead, engaged in manipulative behavior during telephone conversations.

{¶11} The record demonstrates that the trial court did not simply adopt Mother's wishes, as the Jenkinses argue. Instead, it looked at the behavior of the parties following the investigation by Children Services and the parties' willingness to comply with the agency's recommendations. Mother's primary reason for stopping visits at the Jenkinses' was the recommendation that interactions between the boy and girl be supervised. Mother did not trust that the Jenkinses would provide adequate supervision in light of their belief that nothing inappropriate had occurred and Mr. Jenkins's position that no one would tell him how things would operate within his house. The trial court looked at the fact that Mother had attempted to arrange visits between with the Jenkinses outside of the Jenkinses' home, but Mr. Jenkins refused. The trial court also looked at Mr. Jenkins's refusal to attend any type of counseling with Mother and the girl because, at an earlier point in time, Mother attempted to have him attend counseling with his ex-wife.

{¶12} Upon review of the record, we do not agree with the Jenkinses that the trial court gave Mother's wishes "undue deference" or made it "the sole determinate" in determining the child's best interests. The Jenkinses' first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE JUDGMENT OF THE TRIAL COURT ADOPTING THE MAGISTRATE'S DECISION WAS AGAINST THE WEIGHT OF THE EVIDENCE.

{¶13} The Jenkinses also argue that the trial court's decision was against the manifest weight of the evidence. Although couching their argument as a manifest weight of the evidence argument, the Jenkinses appear to be challenging the trial court's determination that it is in the

best interest of the girl not to award them visitation. They recognize that this Court will not reverse a "decision regarding visitation rights * * * except upon a finding of an abuse of discretion." *Harrold*, 2006-Ohio-5634, at ¶ 6. Factual findings by the trial court, however, are reviewed "under a manifest weight of the evidence standard." *Loewen v. Newsome*, 9th Dist. Summit No. 28107, 2018-Ohio-73, ¶ 15.

{¶14} The Jenkinses argue that working through the factors listed in Section 3109.051(D) demonstrates that they should be entitled to visitation. Section 3109.051(D)(1) requires a court to examine "[t]he prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity[.]" According to the Jenkinses, the evidence established that they acted as surrogate parents for the girl, caring for her on numerous occasions. The evidence also showed that they had a loving and nurturing relationship with the girl since her birth and participated in social activities with her such as baking cookies and snow sledding.

{¶15} Mother argues that, notwithstanding her up and down relationship with the Jenkinses, she did not let it prohibit them from building a relationship with the girl. She argues that she only reached the conclusion that the girl would be unsafe in the Jenkinses' house after there was inappropriate behavior by the boy, the Jenkinses continued to leave him unsupervised, there was more inappropriate behavior by the boy, and the Jenkinses were unwilling to address the issue.

{¶16} Section 3109.051(D)(2) requires the court to consider the geographical location of the Jenkinses' home and the distance between it and Mother's home. According to the Jenkinses, they live near Mother, which would make regular visitation with the girl feasible.

{¶17} Section 3109.051(D)(3) concerns the child's and parent's available time. Section 3109.051(D)(4) concerns the child's age. The Jenkinses argue that neither of these factors have a negative effect on the amount of time they could spend with the girl. Mother argues that, because the girl is young, her age affects her ability to maintain control over her safety while at the Jenkinses house. Mother notes that the Jenkinses have had the boy and girl take baths together and had them sleep in the same bed together, even after there were allegations of inappropriate acts by the boy.

{¶18} Neither party deems the factors listed under Section 3109.051(D)(5), (6), or (8) applicable in this case. Section 3109.051(D)(7) concerns the health and safety of the child. The Jenkinses argue that they never harmed or attempted to harm the girl. Mother argues that, while in the Jenkinses' care, the boy inspected the girl's private areas with a flashlight and put his hand down the back of her pants. She contends that the reason Children Services found the allegations unsubstantiated was because it could not establish that the boy knew what he was doing, not because the acts did not occur. Mother also asserts that the agency recommended that any time awarded to the Jenkinses be supervised.

{¶19} Section 3109.051(D)(9) concerns the mental and physical health of all parties. Mother argues that, following the girl's revelation about what had occurred at the Jenkinses' house, she sought counseling for herself and her daughter. Based on that counseling, she decided to limit the Jenkinses' access to the girl.

{¶20} Section 3109.051(D)(10) concerns the willingness of a person who requested visitation to reschedule missed visitation. Mother argues that Mr. Jenkins does not respect boundaries or her opinion about caring for the girl. She argues that he ignored her request to not talk to the girl when she was not present and her request to not speak to the boy and girl together.

She also argues that Mr. Jenkins refused to attend counseling on any issue, that he attended the girl's dance recital over her wishes, that he complained about not needing a babysitter when she tried to schedule a visit at a family member's house, and that he brought the boy to an arranged visit with the girl at Mr. Jenkins's mother's house.

{¶21} The parties agree that Section 3109.051(D)(11), (12), (13), and (14) are not applicable to this case. They have not pointed to any other factors that would be relevant under Section 3109.051(D)(16). Section 3109.051(D)(15), however, involves Mother's wishes and concerns. Mother notes that, under *Troxel*, a court is required to give special weight to her wishes, which is to protect her daughter from harm. *Troxel*, 530 U.S. at 70 ("[T]he decision whether * * * an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance. And, if a fit parent's decision * * * becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination."). Mother argues that the boundaries she wished to set with the Jenkinses are consistent with the advice she received from her counselor about how to keep the girl safe while in their care.

{¶22} Upon review of the record, we conclude that the Jenkinses have not established that any of the trial court's factual findings regarding the best interest factors were against the manifest weight of the evidence. We also conclude that they have not established that the trial court exercised improper discretion when it determined that it was not in the best interest of the girl to award the Jenkinses visitation time. The record demonstrates that Mother has legitimate concerns about whether the girl could be harmed while at the Jenkinses' house and that the Jenkinses have made little or no effort to address those concerns. We also note that Mother has not sought to cut off visitation with the Jenkinses entirely but has attempted to come up with

other opportunities for the Jenkinses to visit or talk with the girl, which have been rejected or exploited by the Jenkinses. *See id.* The Jenkinses' second assignment of error is overruled.

III.

{¶23} The Jenkinses' assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
SCHAFER, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

ROBERT CABRERA, Attorney at Law, for Appellant.

BRANDON G. OLIVER, Attorney at Law, for Appellee.